**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MICHAEL BILINSKY, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

   v.

GATOS SILVER, INC.,
STEPHEN ORR,
ROGER JOHNSON,
THOMAS S. KAPLAN,
JANICE STAIRS,
JEB BURNS,
ALI ERFAN,
IGOR GONZALES,
KARL HANNEMAN,
IGOR LEVENTAL
DAVID PEAT,
BMO CAPITAL MARKETS CORP.,
GOLDMAN SACHS & CO. LLC,
RBC CAPITAL MARKETS, LLC,
CANACCORD GENUITY CORP., and
CIBC WORLD MARKETS CORP.,

      Defendants,

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

---

Plaintiff Michael Bilinsky ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Gatos Silver, Inc. ("Gatos" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Gatos; and (c) review of other publicly available information concerning Gatos.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Gatos: (a) common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's initial public offering (the "IPO" or "Offering") conducted on or about October 28, 2020; and/or (b) securities between October 28, 2020 and January 25, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Gatos focuses on the production, development and exploration of silver- and zinc-rich mineral deposits. Its primary efforts are the operation of the Los Gatos Joint Venture ("LGJV") in Chihuahua, Mexico with Dowa Metals and Mining Co., Ltd. In addition to commercializing lead and zinc concentrates, the Company performs additional definition drilling to define and expand mineralization of the Cerro Los Gatos deposit ("CLG").

1

3.      On October 29, 2020, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 24,644,500 shares of common stock at a price of $7.00 per share. The Company received net proceeds of approximately $156.1 million from the Offering. The proceeds from the IPO were purportedly to be used to retire a portion of the Los Gatos Working Capital Facility, repurchase an 18.5% interest in the Los Gatos Joint Venture, fund near-term debt service needs, conduct a feasibility study for a 3,000 tpd production rate expansion of the CLG mine, and working capital and general corporate purposes.

4.      On January 25, 2022, after the market closed, Gatos Silver revealed that "there were errors in the technical report entitled 'Los Gatos Project, Chihuahua, Mexico' with an effective date of July 1, 2020 . . . , as well as indications that there is an overestimation in the existing resource model." On a preliminary basis, the Company estimates a potential reduction of the metal content of the mineral reserve ranging from 30% to 50% of the metal content remaining after depletion.

5.      On this news, the Company's stock price fell $7.02, or 69%, to close at $3.17 per share on January 26, 2022, on unusually heavy trading volume.

6.      By the commencement of this action, Gatos shares were trading as low as $3.20 per share, a nearly 54% decline from the $7.00 per share IPO price.

7.      In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the technical report for Gatos's primary mine, the Cerro Los Gatos

deposit, contained certain errors; (2) that, among other things, the mineral reserves had been overestimated by as much as 50%; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

12.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

3

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Michael Bilinsky, as set forth in the accompanying certification, incorporated by reference herein, purchased Gatos common stock pursuant and/or traceable to the IPO and Gatos securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Gatos is incorporated under the laws of Delaware with its principal executive offices located in Greenwood Village, Colorado. Gatos's common stock trades on the New York Stock Exchange ("NYSE") and the Toronto Stock Exchange ("TSX") under the symbol "GATO."

15.     Defendant Stephen Orr ("Orr") was the Company's Chief Executive Officer ("CEO") at all relevant times. He signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16.     Defendant Roger Johnson ("Johnson") was the Company's Chief Financial Officer ("CFO") at all relevant times. He signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendants Orr and Johnson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants

were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

18.    Defendant Thomas S. Kaplan ("Kaplan") was the Chairman of the Board of Directors of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.    Defendant Janice Stairs ("Stairs") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.    Defendant Jeb Burns ("Burns") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.    Defendant Ali Erfan ("Erfan") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.    Defendant Igor Gonzales ("Gonzales") was a director of the Company and signed or authorized the signing of the Registration Statement filed with the SEC.

23.    Defendant Karl Hanneman ("Hanneman") was a director of the Company and signed or authorized the signing of the Registration Statement filed with the SEC.

24.    Defendant Igor Levental ("Levental") was a director of the Company and signed or authorized the signing of the Registration Statement filed with the SEC.

25.     Defendant David Peat ("Peat") was a director of the Company and signed or authorized the signing of the Registration Statement filed with the SEC.

26.     Defendants Orr, Johnson, Kaplan, Stairs, Burns, Erfan, Gonzales, Hanneman, Levental, and Peat are collectively referred to hereinafter as the "Securities Act Individual Defendants."

27.     Defendant BMO Capital Markets Corp. ("BMO Capital") served as an underwriter for the IPO. In the Offering, BMO Capital agreed to purchase 6,071,834 shares of the Company's common stock, exclusive of the over-allotment option.

28.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the IPO. In the Offering, Goldman Sachs agreed to purchase 6,071,833 shares of the Company's common stock, exclusive of the over-allotment option.

29.     Defendant RBC Capital Markets, LLC ("RBC Capital") served as an underwriter for the IPO. In the Offering, RBC Capital agreed to purchase 6,071,833 shares of the Company's common stock, exclusive of the over-allotment option.

30.     Defendant Canaccord Genuity Corp. ("Canaccord") served as an underwriter for the IPO. In the Offering, Canaccord agreed to purchase 2,143,000 shares of the Company's common stock, exclusive of the over-allotment option.

31.     Defendant CIBC World Markets Corp. ("CIBC") served as an underwriter for the IPO. In the Offering, CIBC agreed to purchase 1,071,500 shares of the Company's common stock, exclusive of the over-allotment option.

32.     Defendants BMO Capital, Goldman Sachs, RBC Capital, Canaccord, and CIBC are collectively referred to hereinafter as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

33.     Gatos focuses on the production, development and exploration of silver- and zinc-rich mineral deposits. Its primary efforts are the operation of the Los Gatos Joint Venture ("LGJV") in Chihuahua, Mexico with Dowa Metals and Mining Co., Ltd. In addition to commercializing lead and zinc concentrates, the Company performs additional definition drilling to define and expand mineralization of the Cerro Los Gatos deposit ("CLG").

### The Company's False and/or Misleading

### Registration Statement and Prospectus

34.     On October 1, 2020, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.

35.     On October 21, 2020 the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on October 27, 2020.

36.     On October 29, 2020, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 24,644,500 shares of common stock at a price of $7.00 per share. The Company received net proceeds of approximately $156.1 million from the Offering. The proceeds from the IPO were purportedly to be used to retire a portion of the Los Gatos Working Capital Facility, repurchase an 18.5% interest in the Los Gatos Joint Venture, fund near-term debt service needs, conduct a feasibility study for a 3,000 tpd production rate expansion of the CLG mine, and working capital and general corporate purposes.

37.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

38.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

39.     The Registration Statement stated .

The Los Gatos Technical Report, which has an effective date of July 1, 2020, estimates that the deposit contains 9.6 million diluted tonnes of proven and probable mineral reserves (or 5.0 million diluted tonnes of proven and probable mineral reserves on a 51.5% basis), with 6.4 million diluted tonnes of proven mineral reserves (or 3.3 million diluted tonnes of proven mineral reserves on a 51.5% basis) and 3.3 million diluted tonnes of probable mineral reserves (or 1.7 million diluted tonnes of probable mineral reserves on a 51.5% basis). Average proven and probable mineral reserve grades are 306 g/t silver, 0.35 g/t gold, 2.76% lead and 5.65% zinc.

40.     The Registration Statement purported to warn that the mineral reserve calculations "are only estimates" and actual results "may vary." In greater part, the report stated[1]:

***Mineral reserve and mineral resource calculations at the Cerro Los Gatos Mine and the Los Gatos District are only estimates.***

Calculations of mineral reserves at the Cerro Los Gatos Mine and of the mineral resources at the Los Gatos District are only estimates and depend on geological interpretation and statistical inferences or assumptions drawn from drilling and sampling analysis, which might prove to be materially inaccurate. ***There is a degree of uncertainty attributable to the calculation of mineral reserves and mineral resources. Until mineral reserves and mineral resources are actually mined and processed, the quantity of metal and grades must be considered as estimates only and no assurance can be given that the indicated levels of metals will be produced.*** In making determinations about whether to advance any of our

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

projects to development, we must rely upon estimated calculations for the mineral reserves and mineral resources and grades of mineralization on our properties.

The estimation of mineral reserves and mineral resources is a subjective process that is partially dependent upon the judgment of the persons preparing the estimates. The process relies on the quantity and quality of available data and is based on knowledge, mining experience, statistical analysis of drilling results and industry practices. Valid estimates made at a given time may significantly change when new information becomes available.

Estimated mineral reserves and mineral resources may have to be recalculated based on changes in metal prices, further exploration or development activity or actual production experience. This could materially and adversely affect estimates of the volume or grade of mineralization, estimated recovery rates or other important factors that influence mineral reserves and mineral resources estimates. The extent to which mineral resources may ultimately be reclassified as mineral reserves is dependent upon the demonstration of their profitable recovery. Any material changes in volume and grades of mineralization will affect the economic viability of placing a property into production and a property's return on capital. We cannot provide assurance that mineralization can be mined or processed profitably.

Mineral reserve and mineral resource estimates have been determined and valued based on assumed future metal prices, cut-off grades and operating costs that may prove to be inaccurate. Extended declines in the market price for silver, lead and zinc may render portions of our mineralization uneconomic and result in reduced reported volume and grades, which in turn could have a material adverse effect on our financial performance, financial position and results of operations.

In addition, inferred mineral resources have a great amount of uncertainty as to their existence and their economic and legal feasibility. You should not assume that any part of an inferred mineral resource will be upgraded to a higher category or that any of the mineral resources not already classified as mineral reserves will be reclassified as mineral reserves.

(First emphasis in original.)

41.    The Registration Statement was materially false and misleading and omitted to state: (1) that the technical report for Gatos's primary mine, the Cerro Los Gatos deposit, contained certain errors; (2) that, among other things, the mineral reserves had been overestimated by as much as 50%; and (3) that, as a result of the foregoing, Defendants' positive

statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Materially False and Misleading**

**<u>Statements Issued During the Class Period</u>**

42.     The Class Period begins on October 28 2020. On that day, Gatos's common stock began publicly trading pursuant to the Registration Statement, including the statements identified in ¶¶39-40.

43.     On December 8, 2020, Gatos announced its third quarter 2020 financial results in a  press release that stated, among other things:

The Company reported the following key highlights through September 30, 2020:

- Rapid recommissioning of the Cerro Los Gatos ("CLG") mine following Mexico's mandated COVID-19 project suspension,

- Strong operational and financial results from CLG following a 45-day temporary suspension. The CLG mine was recommissioned in late May 2020 with an optimized plan averaging a monthly production rate of 1,750 tpd to September 30, 2020,

- Record production from the CLG mine – 453,392 ore tonnes were mined in the first nine months of 2020,

- Record silver, zinc and lead metal recoveries at the CLG processing plant during the third quarter 2020 - silver recovery approximated the Los Gatos Technical Report estimated recoveries at 85.1%, while zinc and lead recovery exceeded forecast at 73.9% and 87.3%, respectively,

- Record quarterly cash flow generation at the Los Gatos Joint Venture ("LGJV") in the third quarter 2020, and

- Applied for public listing on the NYSE and TSX and successfully completed an initial public offering ("IPO") of 24,644,500 shares, raising gross proceeds of US$172.5 million in the fourth quarter 2020.

44.     On December 9, 2020, Gatos filed its quarterly report on Form 10-Q for the period ended September 30, 2020, affirming the previously reported financial results. It also stated that the Company's "disclosure controls and procedures were effective as of September 30, 2020."

45.     On March 29, 2021, Gatos announced its fourth quarter and full year 2020 operational and financial results, including its 2021 projection, in a press release that stated, in relevant part:

**The Company reported the following key highlights for 2020:**

- Record production of 652,739 ore tonnes from the Los Gatos Joint Venture ("LGJV") owned Cerro Los Gatos ("CLG") mine;

- Record silver, gold, zinc and lead metal recoveries at the CLG processing plant by the end of 2020 with silver, gold, zinc and lead recoveries exceeding plan during the fourth quarter;

- Designed 2,500 tpd production rate achieved at the CLG mine by end of 2020;

- Two consecutive profitable quarters to end 2020;

- Gross proceeds of $172.5 million raised in the fourth quarter in initial public offering ("IPO"); and

- 27,000-meter exploration program commenced at CLG in December.

46.     The same day, Gatos filed its annual report on Form 10-K for the period ended December 31, 2020 ("2020 10-K"), affirming the previously reported financial results and stating that the Company's "disclosure controls and procedures were effective as of December 31, 2020." Regarding the CLG mine and technical report, the 2020 10-K stated:

The Los Gatos Technical Report estimates that the [CLG] deposit contains *approximately 9.6 million diluted tonnes of proven and probable mineral reserves* (or approximately 5.0 million diluted tonnes of proven and probable

11

mineral reserves on a 51.5% basis), with approximately 6.4 million diluted tonnes of proven mineral reserves (or approximately 3.3 million diluted tonnes of proven mineral reserves on a 51.5% basis) and approximately 3.3 million diluted tonnes of probable mineral reserves (or approximately 1.7 million diluted tonnes of probable mineral reserves on a 51.5% basis). Average proven and probable mineral reserve grades are 306 g/t silver, 0.35 g/t gold, 2.76% lead and 5.65% zinc. ***The mineral reserve estimates contained in the Los Gatos Technical Report have an effective date of July 1, 2020*** and exclude 655,746 tonnes of mineral reserves that have been mined through June 30, 2020. Subsequent to July 1, 2020, 363,857 tonnes of material have been mined through December 31, 2020, which we believe would not result in a material change to the information contained in the Los Gatos Technical Report.

47.     The 2020 10-K detailed the basis for these estimated mineral reserves:

The material assumptions for the mineral resource estimates at the CLG include (i) resource estimation completed by Tetra Tech in MicroMine mining software using drill hole data provided by MPR, (ii) usage of histograms and probability plots to determine where high-grade distribution tails became unsupported or deviated from lognormal and application of upper limits for grade capping, (iii) compositing sample intervals to two meters to match the mode sample length, (iv) using geological modeling and vein modeling, (v) using specific gravity measurements and (vi) no dilution being accounted for in the mineral resource estimates.

48.     The 2020 10-K purported to warn that the mineral reserve calculations "are only

estimates" and actual results "may vary." In greater part, the report stated:

***Mineral reserve and mineral resource calculations at the CLG and the Los Gatos District are only estimates and actual production results may vary significantly from the estimates.***

Calculations of mineral reserves at the CLG and of the mineral resources at the Los Gatos District are only estimates and depend on geological interpretation and statistical inferences or assumptions drawn from drilling and sampling analysis, which might prove to be materially inaccurate. ***There is a degree of uncertainty attributable to the calculation of mineral reserves and mineral resources. Until mineral reserves and mineral resources are actually mined and processed, the quantity of metal and grades must be considered as estimates only and no assurance can be given that the indicated levels of metals will be produced.*** In making determinations about whether to advance any of our projects to development, we must rely upon estimated calculations for the mineral reserves and mineral resources and grades of mineralization on our properties.

The estimation of mineral reserves and mineral resources is a subjective process that is partially dependent upon the judgment of the persons preparing the estimates. The process relies on the quantity and quality of available data and is based on knowledge, mining experience, statistical analysis of drilling results and industry practices. Valid estimates made at a given time may significantly change when new information becomes available.

Estimated mineral reserves and mineral resources may have to be recalculated based on changes in metal prices, further exploration or development activity or actual production experience. This could materially and adversely affect estimates of the volume or grade of mineralization, estimated recovery rates or other important factors that influence mineral reserves and mineral resources estimates. The extent to which mineral resources may ultimately be reclassified as mineral reserves is dependent upon the demonstration of their profitable recovery. Any material changes in volume and grades of mineralization will affect the economic viability of placing a property into production and a property's return on capital. We cannot provide assurance that mineralization can be mined or processed profitably.

Mineral reserve and mineral resource estimates have been determined and valued based on assumed future metal prices, cut-off grades and operating costs that may prove to be inaccurate. Extended declines in the market price for silver, lead and zinc may render portions of our mineralization uneconomic and result in reduced reported volume and grades, which in turn could have a material adverse effect on our financial performance, financial position and results of operations.

In addition, inferred mineral resources have a great amount of uncertainty as to their existence and their economic and legal feasibility. There should be no assumption that any part of an inferred mineral resource will be upgraded to a higher category or that any of the mineral resources not already classified as mineral reserves will be reclassified as mineral reserves.

(First emphasis in original.)

49.     On May 7, 2021, Gatos announced its first quarter 2021 financial results in a press release that stated, in relevant part:

**Key Highlights:**

- Repurchased an additional 18.5% interest in the Los Gatos Joint Venture ("LGJV"), increasing the Company's LGJV interest to 70%;

- Extinguished the $60 million LGJV Working Capital Facility of which Gatos Silver's pro-rata portion was $42 million;

- Mined 209,832 tonnes of ore from the Cerro Los Gatos ("CLG") mine;

- Achieved strong metal recoveries at the CLG processing plant with silver recovery averaging 85%, lead recovery averaging 87% and zinc recovery averaging 71%;

Stephen Orr, the Company's Chief Executive Officer, stated: "Q1 established a strong foundation for 2021 operations. The CLG Project provided record revenue for the LGJV and the mine operated at its designed 2,500 tpd throughput for each operating day. . . . So far, in the second quarter of 2021, the CLG project is performing above expectation as development during Q1 allowed CLG to access higher grade ore zones, yielding above budget metal production and revenue. . . ."

50.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2021, affirming the previously reported financial results. It also stated that the Company's "disclosure controls and procedures were effective as of March 31, 2021."

51.     On July 7, 2021, Gatos announced "record production" at the CLG mine in a press release that stated:

**CLG Q2 Operating Performance**

Gatos Silver achieved strong operating performance in Q2 at the CLG mine which produced a quarterly record of 240,047 ore tonnes. The plant achieved record throughput processing 230,656 tonnes, exceeding the first quarter 2021 ("Q1") performance by 13%.

[Table omitted]

Stephen Orr, Chief Executive Officer, stated "CLG's impressive Q2 mine and plant performance produced record results. Mine development during Q2 accessed the expected higher-grade ore forecast to be mined during 2021 and the plant production averaged a record 2,535 tonnes per day, above the design capacity of 2,500 tonnes per day. Record recoveries for silver, lead and zinc achieved in the quarter were also well above design. The higher tonnage and ore grades combined with the plant's higher throughput and metals recoveries yielded record metals production. As demonstrated by our excellent Q2 performance, we are progressing well against our 2021 production guidance."

52.     On August 9, 2021, Gatos announced its second quarter 2021 operational and financial results in a press release that stated, in relevant part:

**Key Highlights:**

- Achieved record quarterly net income of $13.5 million;

- Produced a quarterly record of 2.1 million ounces of silver from the Los Gatos Joint Venture ("LGJV") Cerro Los Gatos ("CLG") mine, as well as record lead and zinc production based on record throughput and recoveries;

- Achieved record quarterly by-product All-In Sustaining Cost ("AISC") of $12.63 per ounce of payable silver

- Achieved record LGJV plant throughput of 230,656 tonnes (averaging 2,535 tonnes per day), exceeding first quarter 2021 by 13% and above design capacity;

*     *     *

LGJV sales for Q2 and H1 were $75.0 million and $121.3 million, respectively. Q2 and H1 sales increased, compared to the same periods in 2020, primarily as a result of higher metals prices, higher average daily throughputs and a two-month Mexican government mandated suspension of all non-essential operations during April and May 2020.

53.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2021, affirming the previously reported financial results. It also stated that the Company's "disclosure controls and procedures were effective as of June 30, 2021."

54.     On November 8, 2021, Gatos announced its third quarter 2021 operational and financial results in a press release that stated, in relevant part:

**Key Highlights:**

- Achieved record processing throughput of 234,054 tonnes, averaging 2,544 tonnes per day ("tpd") exceeding the 2,500 tpd design capacity at its 70%-owned Cerro Los Gatos ("CLG") mine;

- Achieved strong metal recoveries at CLG with silver recovery averaging 89%, lead recovery averaging 91% and zinc recovery averaging 74%;

*     *     *

LGJV sales for the three and nine months ended September 30, 2021, were $57.0 million and $178.3 million, respectively. These sales, compared to the same periods in 2020, increased primarily as a result of higher metals prices, higher production and the two-month Mexican government mandated suspension of all non-essential operations during April and May 2020.

*       *       *

CLG achieved record above-design plant throughput during Q3 and continued to have strong recoveries in all payable metals. CLG's Q3 revenue decreased from the second quarter 2021 primarily due to lower silver prices and lower mined grades. During October 2021, CLG has seen a dramatic improvement in its mined grades, averaging 316 g/t silver, 4.4% zinc and 2.6% lead, while achieving record plant throughout of 2,620 tonnes per day.

55.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2021, affirming the previously reported financial results. It also stated that the Company's "disclosure controls and procedures were effective as of September 30, 2021."

56.     On January 10, 2022, Gatos announced "record production performance" for fourth quarter 2021, stating in a press release:

Silver production in Q4 was 2.3 million ounces and increased 35% compared to the third quarter 2021 ("Q3"), due primarily to higher mined silver ore grades as well as higher throughput and recoveries. Lead and zinc production in Q4 were slightly below Q3 levels, due to lower mined lead and zinc ore grades. CLG's 2021 silver production of 7.6 million ounces exceeded the Company's guidance of 7.4 million ounces.   Zinc and lead production of 50 million and 40 million pounds, respectively, were both consistent with the Company's 2021 guidance range.

CLG achieved record throughput in Q4 totaling 241,397 tonnes, exceeding Q3 throughput by 3.1%.  For 2021, 909,586 tonnes were processed, a 36% increase compared to 2020, which included a 45-day pandemic-related temporary suspension of plant operations.

CLG achieved record silver recovery during Q4, with recoveries for silver, lead and zinc continuing to exceed design rates.

57.     The above statements identified in ¶¶ 42-56 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business,

operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the technical report for Gatos's primary mine, the Cerro Los Gatos deposit, contained certain errors; (2) that, among other things, the mineral reserves had been overestimated by as much as 50%; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### The Subsequent Disclosures

58.     On January 25, 2022, after the market closed, Gatos Silver revealed that "there were errors in the technical report entitled 'Los Gatos Project, Chihuahua, Mexico' with an effective date of July 1, 2020 . . . , as well as indications that there is an overestimation in the existing resource model." On a preliminary basis, the Company estimates a potential reduction of the metal content of the mineral reserve ranging from 30% to 50% of the metal content remaining after depletion. The Company's press release stated in greater part:

> During the Company's resource and reserve update process for the Los Gatos Joint Venture ("LGJV"), which included a detailed reconciliation of recent production performance, the Company concluded that there were errors in the technical report entitled "Los Gatos Project, Chihuahua, Mexico" with an effective date of July 1, 2020 (the "2020 Technical Report"), as well as indications that there is an overestimation in the existing resource model.
>
> On a preliminary basis, *the Company estimates a potential reduction of the metal content of CLG's mineral reserve ranging from 30% to 50% of the metal content remaining after depletion.* Since the 2020 Technical Report, depletion is 1.3 million tonnes grading 284 g/t silver, 3.9% zinc, 2.3% lead and 0.3 g/t gold that has been processed from July 1, 2020 to December 31, 2021. *At this time, the Company cannot accurately quantify the exact magnitude of the reduction*, and the mineral resource and reserve estimates in the 2020 Technical Report should not be relied upon.
>
> The Company is working with independent engineering consultants to better understand the magnitude of the overestimation, including conducting a detailed reconciliation of production to previous models and reserve calculation estimates, as well as creating a new Life of Mine ("LOM") plan. The Company is working

expeditiously to complete this reconciliation. Given the complex nature of the reconciliation, Gatos Silver anticipates that it will complete its work in the second half of 2022.

59.     On this news, the Company's stock price fell $7.02, or 69%, to close at $3.17 per share on January 26, 2022, on unusually heavy trading volume.

60.     By the commencement of this action, Gatos shares were trading as low as $3.20 per share, a nearly 54% decline from the $7.00 per share IPO price.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Gatos: (a) common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's initial public offering (the "IPO") conducted on or about October 28, 2020; and/or (b) securities between October 28, 2020 and January 25, 2022, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

62.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Gatos's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Gatos shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be

identified from records maintained by Gatos or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

63.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

64.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

65.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Gatos; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

67.     The market for Gatos's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Gatos's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Gatos's securities relying upon the integrity of the market price of the Company's securities and market information relating to Gatos, and have been damaged thereby.

68.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Gatos's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Gatos's business, operations, and prospects as alleged herein.

69.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Gatos's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects,

thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

70.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

71.    During the Class Period, Plaintiff and the Class purchased Gatos's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

72.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Gatos, their control over, and/or receipt and/or modification of Gatos's allegedly materially misleading misstatements

and/or their associations with the Company which made them privy to confidential proprietary information concerning Gatos, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

73.     The market for Gatos's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Gatos's securities traded at artificially inflated prices during the Class Period.  On July 9, 2021, the Company's share price closed at a Class Period high of $19.43 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Gatos's securities and market information relating to Gatos, and have been damaged thereby.

74.     During the Class Period, the artificial inflation of Gatos's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Gatos's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Gatos and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

75.     At all relevant times, the market for Gatos's securities was an efficient market for the following reasons, among others:

(a)     Gatos shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Gatos filed periodic public reports with the SEC and/or the NYSE;

(c)     Gatos regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Gatos was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

76.     As a result of the foregoing, the market for Gatos's securities promptly digested current information regarding Gatos from all publicly available sources and reflected such information in Gatos's share price. Under these circumstances, all purchasers of Gatos's securities during the Class Period suffered similar injury through their purchase of Gatos's securities at artificially inflated prices and a presumption of reliance applies.

77.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128

(1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

78.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Gatos who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 11 of the Securities Act**

**(Against All Defendants)**

79.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

80.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

81.     Gatos is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

82.     As the issuer of the shares, Gatos is strictly liable to Plaintiff and the Class for the misstatements and omissions.

83.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

84.     By reasons of the conduct alleged herein, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

85.     Plaintiff acquired Gatos shares pursuant and/or traceable to the Registration Statement for the IPO.

86.     Plaintiff and the Class have sustained damages. The value of Gatos shares has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act

### (Against the Securities Act Individual Defendants)

87.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

88.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Gatos within the meaning of Section 15 of the Securities Act. The Securities Act Individual Defendants had the power and influence and exercised the same to cause Gatos to engage in the acts described herein.

89.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

90.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## THIRD CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against Gatos and the Individual Defendants

91.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

92.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Gatos's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

93.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Gatos's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

94.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Gatos's financial well-being and prospects, as specified herein.

95.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Gatos's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state

material facts necessary in order to make the statements made about Gatos and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

96.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

97.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Gatos's financial well-being and prospects from the

investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

98.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Gatos's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Gatos's securities during the Class Period at artificially high prices and were damaged thereby.

99.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Gatos was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Gatos securities, or,

if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

100.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

101.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**FOURTH CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

102.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

103.     Individual Defendants acted as controlling persons of Gatos within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued

and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

104.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

105.    As set forth above, Gatos and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: February 22, 2022

By: */s/ Robert V. Prongay*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Michael Bilinsky*

**SWORN CERTIFICATION OF PLAINTIFF**

**GATOS SILVER, INC. SECURITIES LITIGATION**

I, Dr. Michael Bilinsky, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase the Gatos Silver, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Gatos Silver, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

1/27/2022                                           *Michael Bilinsky*
_____                    _____
Date                                                Dr. Michael Bilinsky

**Dr. Michael Bilinsky's Transactions in Gatos Silver, Inc (GATO)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 2/18/2021 | Bought | 300 | $13.2000 |