UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00453-PAB-KLM

MICHAEL BILINSKY, Individually and on Behalf of All Others
Similarly Situated,

        Plaintiff,

v.

GATOS SILVER, INC.,
STEPHEN ORR,
ROGER JOHNSON,
PHILIP PYLE,
JANICE STAIRS,
ALI ERFAN,
IGOR GONZALES,
KARL HANNEMAN,
DAVID PEAT,
CHARLES HANSARD, and
DANIEL MUÑIZ QUINTANILLA,

        Defendants.

---

**PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT
AND AUTHORIZATION TO DISSEMINATE NOTICE OF SETTLEMENT**

---

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

SUMMARY OF THE LITIGATION ............................................................................ 3

    A.    The Initial Complaint ........................................................................... 3

    B.    After Extensive Investigation, Lead Counsel Files the Amended
        Complaint .............................................................................................. 3

    C.    Defendants' Motion to Dismiss ........................................................... 4

    D.    Settlement Negotiations ....................................................................... 5

I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 6

    A.    The Standard for Preliminary Approval ............................................. 6

    B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement,
        Satisfying Rule 23(e)(1)(B)(i) ............................................................. 7

        1.    The "Procedural" Aspects of the Proposed Settlement Satisfy Rule
            23(e)(2)(A)-(B) ............................................................................ 7

        2.    The Proposed Settlement Provides "Adequate" Relief and "Treats
            Class Members Equitably," Satisfying Rule 23(e)(2)(C)-(D) .................... 8

    C.    The Court "Will Likely Be Able to" Certify the Proposed Settlement
        Class, Satisfying Rule 23(e)(1)(B)(ii) ................................................. 16

        1.    Numerosity – Rule 23(a)(1) ........................................................ 17

        2.    Commonality – Rule 23(a)(2) ..................................................... 17

        3.    Typicality – Rule 23(a)(3) ........................................................... 18

        4.    Adequacy – Rule 23(a)(4) ........................................................... 18

        5.    Predominance and Superiority – Rule 23(b)(3) ........................... 18

II.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
     AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ................ 19

III.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................ 21

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**CASES**

*Am. Home Assur. Co. v. Cessna Aircraft Co.*,
   551 F.2d 804 (10th Cir. 1977) ...................................................................................... 6

*Anderson v. Merit Energy Co.*,
   No. CIV.07CV00916LTBBNB, 2009 WL 3378526 (D. Colo. Oct. 20, 2009) ........................ 14

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) ................................................................................ *passim*

*In re HealthSouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) ............................................................................... 14

*In re Molycorp, Inc. Sec. Litig.*,
   No. 12-CV-00292-RM-KMT, 2017 WL 4333997 (D. Colo. Feb. 15, 2017) .................... *passim*

*In re Molycorp, Inc. Sec. Litig.*,
   No. 12-CV-00292-RM-KMT, 2017 WL 4333998 (D. Colo. Mar. 6, 2017) ............................. 6

*In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*,
   205 F.R.D. 572 (D. Colo. 2001) .................................................................................. 17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ........................................................................................ 18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)....................................................................................................... 4

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ............................................................................... 9, 18

*Voulgaris v. Array Biopharma Inc.*,
   No. 17-CV-02789-KLM, 2021 WL 6331178 (D. Colo. Dec. 3, 2021) ........................... 8, 9, 14

*Voulgaris v. Array Biopharma, Inc.*,
   60 F.4th 1259 (10th Cir. 2023) ..................................................................................... 8

**STATUTES**

15 U.S.C. § 78k......................................................................................................... 15

15 U.S.C. § 78u............................................................................................. 14, 15, 19, 20

28 U.S.C. § 1715 (2005) ................................................................................................ 20

**RULES**

Fed. R. Civ. P. 23.............................................................................................................. *passim*

**INTRODUCTION**

The parties have agreed to a proposed Settlement that would resolve this securities class action in exchange for a cash payment of $21,000,000—an outstanding result given Gatos' serious financial constraints, the maximum theoretical damages, and the risks and delay of continued litigation.[1]  Plaintiffs seek the Court's preliminary approval of the proposed Settlement under Rule 23(e)(1) so that notice can be disseminated and a hearing for final approval (the "Final Approval Hearing") can be scheduled.

Under Rule 23(e)(1)(B), preliminary approval should be granted upon the Court's finding that it "will likely be able" to (i) grant final approval of the Settlement under Rule 23(e)(2), and (ii) certify the proposed Settlement Class.  The proposed Settlement readily satisfies this standard.

First, the Court "will likely be able" to grant final approval because the proposed Settlement is procedurally fair and provides adequate relief, satisfying Rule 23(e)(2).  The parties reached the proposed Settlement after arm's-length mediation under the auspices of a respected mediator, Robert Meyer of JAMS.  After exchanging detailed written submissions and conducting a full-day mediation session, Mr. Meyer issued a mediator's recommendation that the parties settle the action for $21 million.

The $21 million settlement is fair, reasonable, and adequate, particularly when measured against the real risk of recovering less—or nothing at all.  Defendants have argued that the Amended Complaint fails to state any viable claim, and that the challenged statements about Gatos's mineral reserves and resources are non-actionable opinions made in good faith.  If these arguments prevailed at the motion to dismiss stage—where over half of securities class actions are

---

[1] Capitalized terms not defined herein have the meanings stated in the Stipulation of Settlement, dated July 13, 2023 (the "Stipulation"), filed herewith.  Emphasis is added, and citations omitted, unless otherwise noted.

dismissed—the Class would recover nothing.  Had litigation continued, Defendants would have continued to press these and other arguments to drastically reduce or eliminate any recovery.

In addition to the substantial risks on the merits, Gatos's financial condition—with limited cash on hand and mineral reserves that will run out within five years—heightened the risk that Gatos could not fund a meaningfully larger resolution, much less satisfy any hypothetical judgment Plaintiffs might eventually obtain.  The risk of delay further favors a prompt resolution, rather than leaving the Settlement Class with no recovery through years of further litigation and appeal.  Lead Counsel Bleichmar Fonti & Auld LLP successfully navigated these risks to achieve the proposed Settlement, which provides the Settlement Class with a prompt, certain and substantial recovery that is a meaningful proportion of recoverable damages and well within the range of reasonableness, as Plaintiffs will further demonstrate at final approval.

Second, the Court will be able to certify the proposed Settlement Class.  With over 69 million shares of Gatos stock outstanding, Rule 23(a)(1)'s numerosity requirement is met, and this action presents common class-wide questions, including falsity, materiality, scienter, and damages, satisfying Rule 23(a)(2).  Typicality and adequacy under Rule 23(a)(3) and (4) are present because (i) Plaintiffs' interests are aligned with all members of the Settlement Class, who purchased Gatos Securities at prices affected by alleged misstatements and omissions, and (ii) Plaintiffs' Counsel are highly experienced in complex securities litigation and have vigorously litigated this action to achieve the best possible recovery.  The proposed notice program will ensure that Settlement Class Members are promptly apprised of the proposed Settlement so they can participate, exclude themselves, or object before the Final Approval Hearing.

Plaintiffs thus respectfully request that the Court grant this unopposed motion and enter the proposed Preliminary Approval Order, which will, among other things:  (i) provide for

2

preliminary approval of the Settlement; (ii) approve the form and manner of notice to the Settlement Class; and (iii) schedule the Final Approval Hearing and related matters.

## SUMMARY OF THE LITIGATION

Plaintiffs allege that Defendants are liable for alleged violations of the Securities Exchange Act of 1934 and the Securities Act of 1933 resulting from materially false and misleading statements, and omissions of material facts required to be disclosed, about Gatos's mineral reserves and resources at its Cerro Los Gatos ("CLG") mine in Mexico. In particular, Plaintiffs allege that Defendants materially overstated CLG's reserves and resources in Gatos's October 2020 IPO, the July 2021 Offering, and other SEC filings and oral statements during the Class Period (December 9, 2020 through January 25, 2022, inclusive) based on a 2020 Technical Report that contained material errors. Defendants deny all of these allegations and do not admit any liability.

### A.    The Initial Complaint

On February 22, 2022, the initial Class Action Complaint for Violations of the Securities Laws was filed against all Defendants. ECF No. 1.

On June 3, 2022, the Court entered an order appointing Lead Plaintiff as lead plaintiff and approving Lead Plaintiff's selection of Lead Counsel. ECF No. 49.

### B.    After Extensive Investigation, Lead Counsel Files the Amended Complaint

On August 15, 2022, Plaintiffs filed an Amended Class Action Complaint for Violations of the Securities Laws (the "Amended Complaint"). ECF No. 54.

The Amended Complaint reflects Lead Counsel's exhaustive investigation, including review of Defendants' SEC filings and other public statements; detailed analysis of the mining industry and applicable regulations; work with consulting experts; and an investigation that included interviews with former Gatos employees. The Amended Complaint is 137 pages long and, even without the benefit of formal discovery, provides detailed allegations about specific

3

documents and communications, including the January 2021 report by a consultant that allegedly identified errors in Gatos's mine plan (*id.* ¶76) and internal emails and meetings that followed Gatos's receipt of the report (*id.* ¶¶77-80).

The Amended Complaint asserted claims for: (1) violations of Section 11 of the Securities Act; (2) violations of Section 15 of the Securities Act; (3) violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (4) violations of Section 20(a) of the Exchange Act.

Plaintiffs asserted the Securities Act claims on behalf of all persons who, in domestic transactions or on the New York Stock Exchange ("NYSE"), purchased or acquired Gatos common stock pursuant or traceable to the 2020 Registration Statement or the 2021 Registration Statement during a Class Period of December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby.  Plaintiffs asserted the Exchange Act claims on behalf of all persons who purchased or acquired Gatos common stock listed on the NYSE, or who, in domestic transactions, purchased or acquired publicly traded call options on Gatos common stock, or sold publicly traded put options on Gatos common stock, during a Class Period of December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby.

### C.     Defendants' Motion to Dismiss

On October 14, 2022, Gatos and the Individual Defendants filed a motion to dismiss the Amended Complaint.  ECF No. 63.  On November 23, 2022, Plaintiffs opposed the motion to dismiss.  ECF No. 67.  On December 23, 2022, Gatos and the Individual Defendants filed a reply in further support of their motion to dismiss.  ECF No. 70.

The motion to dismiss briefs spanned 117 pages and focused on two dispositive issues: scienter and whether the challenged statements are non-actionable opinions under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015).  Had Defendants

prevailed on scienter, the Exchange Act claims would fail, foreclosing the majority of overall damages. Had Defendants prevailed on the latter issue, the entire case would be dismissed. This extensive briefing gave Lead Counsel clear insight into the facts and arguments that each side would press in discovery, summary judgment, and trial.

### D. Settlement Negotiations

After completion of motion to dismiss briefing, the parties engaged in private mediation before Robert Meyer of JAMS. A full-day mediation session occurred on June 13, 2023. Before the session, the parties exchanged detailed mediation statements addressing issues of liability and the strength of the pending motion to dismiss. During the June 13 session, the parties exchanged multiple demands and counteroffers under Mr. Meyer's auspices. At the conclusion of the session, Mr. Meyer made a formal mediator's proposal that the case settle for $21 million.

The parties accepted this proposal, advised the Court on June 15, 2023 of their agreement in principle, and subsequently negotiated the Stipulation.

As set forth in the Stipulation and supporting documents, following preliminary approval of the settlement, $21,000,000 in cash (the "Settlement Amount") will be paid into interest-bearing escrow accounts. (*See* Stipulation ¶¶2.1, 2.4.) The Net Settlement Fund (*i.e.*, the Settlement Amount, plus accrued interest, minus any attorneys' fees, expenses, and awards to Plaintiffs awarded by the Court, Notice and Administration Costs, Taxes and Tax Expenses, and any other Court-approved deductions) will be distributed to Settlement Class Members who submit valid Proof of Claim forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court (discussed below).

I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

A.      The Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that the Court should approve a class action settlement if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Tenth Circuit has long recognized the strong judicial policy "to encourage, promote, and sustain the compromise and settlement of disputed claims."  *Am. Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977).

Judicial approval of a class action settlement is a two-step process.  <u>First</u>, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.  *See* Fed. R. Civ. P. 23(e)(1).  <u>Second</u>, after notice is provided and a hearing is held, the Court determines whether to grant final approval of the settlement.  *See* Fed. R. Civ. P. 23(e)(2).

Under Rule 23(e)(1)(B), a court should grant preliminary approval upon a finding that it "will likely be able" to (i) grant final approval of the settlement under Rule 23(e)(2), and (ii) certify the proposed settlement class.[2]  "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives."  *In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-00292-RM-KMT, 2017 WL 4333997, at *3 (D. Colo. Feb. 15, 2017), *report and recommendation adopted*, No. 12-CV-00292-RM-KMT, 2017 WL 4333998 (D. Colo. Mar. 6, 2017).

---

[2] This standard for preliminary approval, established by amendments to Rule 23(e) effective on December 1, 2018, is substantively similar to the standard articulated in earlier case law.

In considering *final* approval of the settlement, Rule 23(e)(2) provides that the Court should consider whether "it is fair, reasonable, and adequate after considering whether:"

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

As discussed below, the proposed Settlement readily satisfies both of Rule 23(e)(1)(B)'s requirements, and Rule 23's requirements for certifying a settlement class are met. Because the Court "will likely be able" to grant final approval and certify the proposed Settlement Class, the Preliminary Approval Order should be entered and notice should be sent to the Settlement Class in advance of the Final Approval Hearing.

**B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement, Satisfying Rule 23(e)(1)(B)(i)**

**1.    The Proposed Settlement Satisfies Rule 23(e)(2)(A)-(B)**

As noted above, at final approval Rule 23(e)(2) requires that "the class representatives and class counsel have adequately represented the class" and that "the proposal was negotiated at arm's length." Both adequate representation and arm's-length negotiation are present here, confirming that the Court "will likely be able" to grant final approval. Fed. R. Civ. P. 23(e)(1)(B)(i).

**Adequate Representation:** Rule 23(e)(2)(A) is satisfied because Plaintiffs and their counsel have adequately represented the Class by vigorously prosecuting this action, and Plaintiffs' interest in obtaining the largest possible recovery is fully aligned with the rest of the Settlement Class. *See Molycorp*, 2017 WL 4333997 at *7. Plaintiffs also retained counsel who are highly experienced in complex securities litigation, *see* ECF No. 16-7, and developed an

unusually detailed Amended Complaint and vigorously opposed Defendants' motion to dismiss in order to maximize the value of the Class's claims.

**Arm's-Length Negotiation:**  The proposed Settlement is the result of extensive arm's-length negotiation with Defendants in a full-day mediation, leading to Mr. Meyer's mediator's recommendation to resolve the action for $21 million.  "Where a settlement results from arm's-length negotiations between experienced counsel, the Court may generally presume the settlement to be fair, adequate and reasonable." *Voulgaris v. Array Biopharma Inc.*, No. 17-CV-02789-KLM, 2021 WL 6331178, at *5 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023).  Further, the "[u]tilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *Molycorp*, 2017 WL 4333997 at *4.

### 2.    The Proposed Settlement Provides "Adequate" Relief and "Treats Class Members Equitably," Satisfying Rule 23(e)(2)(C)-(D)

In addition to meeting the procedural requirements addressed above, the Court will likely be able to grant final approval because "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other."  Rule 23(e)(2)(C)-(D).  The proposed Settlement provides a significant, prompt cash recovery for the Settlement Class, and all Settlement Class Members will be treated equitably by receiving *pro rata* distributions based on their recognized losses under the proposed Plan of Allocation.

#### a.    The Proposed Settlement Provides Adequate Relief

Rule 23(e)(2)(C) provides that the adequacy of relief should be assessed "taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

8

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

Here, all of the Rule 23(e)(2)(C) factors are satisfied.  The proposed Settlement provides for a cash recovery of $21 million—an outstanding result for the Settlement Class given the risks and delay of continued litigation, the maximum theoretical damages, and Defendants' financial constraints and limited ability to withstand a larger judgment.

### (1)    The Costs, Risks, and Delay of Trial and Appeal

In assessing the adequacy of relief, the Court should consider "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014) (Brimmer, C.J.) (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)); *see also Array Biopharma Inc.*, 2021 WL 6331178 at *6 ("[C]ourts in this District weigh the recovery against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.").

Here, the risks on the merits—along with Gatos's financial constraints and the prospect of protracted further litigation—confirm that the proposed Settlement is well within the range of reasonableness, as Plaintiffs will further demonstrate in their motion for final approval.

**Merits Risks:**  This action carries significant risk because it involves complex and uncertain legal and factual issues, including whether the challenged statements are actionable as a matter of law under *Omnicare*; whether any Defendants acted with scienter; whether Defendants violated their disclosure obligations under Item 303 of SEC Regulation S-K; whether Plaintiffs satisfy the other requirements of Section 11 of the Securities Act; and the appropriate methodology for determining damages.

9

Thus, although Plaintiffs and Plaintiffs' Counsel believe that the claims asserted are meritorious, Plaintiffs and the broader Class faced numerous risks in proving Defendants' liability.

For example, Defendants have strenuously argued that Plaintiffs cannot plead or prove any misstatement because Gatos's mineral reserve and resource figures were called "estimates." While Plaintiffs have strong responses to such arguments, if Defendants prevailed at the motion to dismiss stage, summary judgment, or trial on the absence of any material misstatement or omission, the entire case would be lost, eliminating any recovery.

Defendants have further argued that Plaintiffs cannot plead or prove scienter where Gatos's mining expert Tetra Tech repeatedly consented to the Company's use of the 2020 Technical Report, and that Defendants reasonably relied on Tetra Tech instead of crediting another consultant with different views. *See* ECF Nos. 63, 70. While Plaintiffs again have strong responses, if Defendants were to persuade the Court or a jury that scienter was absent, it would eliminate any recovery under the Exchange Act and foreclose the majority of the Class's overall damages.

These risks were particularly acute because the Court has yet to rule on Defendants' motion to dismiss—and over 50% of securities class actions fail at the pleading stage.[3] And even if Plaintiffs defeated Defendants' motion to dismiss and secured discovery substantiating that Defendants made material misstatements or omissions with scienter, Defendants likely would challenge class certification and other elements of certain claims, including loss causation and damages. Accordingly, absent the proposed Settlement, there was a real risk that the Settlement Class would have recovered significantly less than the total Settlement Amount—or nothing at all.

---

[3] *See* NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review (Jan. 24, 2023), *available at*
https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--action-litigation--2022-full-/publication-download.html

**Risk of Financial Condition:** Even if Plaintiffs prevailed on the merits, Gatos's financial position greatly diminishes the prospect of any cash recovery meaningfully larger than the proposed Settlement. Gatos has reported that it had a cash balance of $10.5 million and $9 million outstanding debt of as of May 31, 2023.[4] Further, after correcting the errors in the 2020 Technical Report, Gatos has reported that the life of its CLG mine will end in 2028—meaning no more ore can be economically extracted and sold—and there is "no assurance" that Gatos will identify "any additional proven or probable mineral reserves."

**Risk of Delay:** Finally, the inherent delay in obtaining and collecting any judgment is also relevant. If the litigation had continued, Plaintiffs would have had to defeat Defendants' motion to dismiss, complete discovery, and prevail at summary judgment, at trial, and at appeals that would likely follow before any funds would be distributed to the Class. These developments could deprive the Class of any recovery for years, magnifying the risk that Gatos's financial condition could further decline over the intervening period—particularly since Gatos's only production mine will run out of ore by 2028. By contrast, the proposed Settlement provides certainty and a substantial, prompt cash payment to the Settlement Class.

Thus, the costs, risks, and delay of further litigation, including trial and appeals, weigh heavily in favor of preliminary approval of the proposed Settlement.

> **(2)** **The Proposed Method for Distributing Relief Is Effective**

As demonstrated below and in the supporting Declaration of Morgan Kimball, the proposed method of distributing relief to the Settlement Class—comprised of the notice and claims administration process—is effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

---

[4] While the LGJV has additional cash, Gatos only has a 70% interest and cannot access the LGJV's cash absent authorized distributions.

The notice process includes direct mail notice to all those who can be identified with reasonable effort, including through nominees. The Notice (Ex. A-1 to the Stipulation) is a folded document with eight 10.5" x 6" panels (commonly referred to as a "self-mailer") that contains all of the information required under the PSLRA and satisfies Rule 23 (*see infra* at 19-20). (Kimball Decl. ¶6.) Because recent experience in large securities settlements indicates that about 80% of claims are filed electronically,[5] the self-mailer does not include a paper Proof of Claim form (Ex. A-3 to the Stipulation), but directs potential Settlement Class members (in bold on the first page) to a case-specific website where they can submit claims electronically or request a paper copy of the Proof of Claim.[6] (Kimball Decl. ¶6.) The self-mailer also provides a toll-free phone number to contact the Claims Administrator and request a paper copy of the Proof of Claim. (*Id.*) The website also provides a Long-Form Notice (Ex. A-2 to the Stipulation) with additional detailed information, including in question-and-answer format, as well as copies of the Stipulation and other relevant documents. (*Id.* ¶16.) Finally, in addition to direct mailing and the website, the notice program will include publication of the Summary Notice (Ex. A-4 to the Stipulation) in *Investors' Business Daily* and dissemination through PR Newswire, as well as advertisements on the Google Display Network and Yahoo! Finance websites. (*Id.* ¶¶14-15.)

---

[5] *See, e.g.*, *In re Petrobras Sec. Litig.*, 14-cv-9662 (S.D.N.Y.), ECF 970 ¶16.

[6] Providing the long-form notice and claim form online (with direct mail notice provided by postcard) has been approved under the PSLRA and Rule 23 in other securities class settlements. *See, e.g.*, *Klein v. Altria Group, Inc.*, No. 3:20-cv-75 (E.D. Va. Dec. 16, 2021), ECF 303 ¶¶7-8 (approving notice through "mailing of the Postcard Notice," with the "Notice and the Claim Form . . . to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded"); *In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-cv-04155 (GHW) (S.D.N.Y. July 24, 2019), ECF 197 ¶9 (approving notice through "mailing and distribution of the Postcard Notice, the posting of the Notice and Claim Form on the Settlement Website, and the publication of the Summary Notice"). Here, the self-mailer Notice provides more extensive information than the postcard notices approved in other securities settlements.

12

The current estimate calls for direct mailing of the Notice to about 30,000 potential Settlement Class members. Accordingly, this combination of direct mailing of the Notice and electronic dissemination of the Long-Form Notice and Proof of Claim (with paper copies available through the website or by phone) significantly reduces printing and postage costs and waste, thereby preserving more assets for distribution to Settlement Class members. (Kimball Decl. ¶13.)

The claims administration process will follow established procedures in securities class actions. Settlement Class Members will be required to complete the Proof of Claim form to provide the transaction information and documentation necessary to calculate their Recognized Loss Amounts and Recognized Claims pursuant to the Plan of Allocation (set forth in full in the Long-Form Notice).

Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to Authorized Claimants. If any monies remain in the Net Settlement Fund after the initial distributions, the Claims Administrator will conduct re-distributions until it is no longer cost-effective to do so. At such time, any remaining balance will be contributed to a non-profit, charitable organization serving the public interest and unaffiliated with the Parties or their counsel, selected by Lead Counsel.

**(3)     The Terms and Timing of Payment of Attorneys' Fees and Expenses Are Reasonable**

The proposed Settlement does not contemplate any specific fee and expense award, but rather recognizes that Lead Counsel will make a separate application for fees and expenses to be paid from the Settlement Fund in an amount to be approved by the Court. Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion in accordance with the Preliminary Approval Order.

13

As stated in the proposed Notice, Lead Counsel will seek total fees of no more than 28% of the Settlement Fund.  This amount is below the percentages that courts have regularly approved in this District in other class actions, including complex securities class actions.  *See, e.g.*, *Array Biopharma Inc.*, 2021 WL 6331178 at *12 (awarding 33.3% fee in securities class settlement); *Anderson v. Merit Energy Co.*, No. CIV.07CV00916LTBBNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.").  Lead Counsel will also seek an award of litigation expenses in an amount not to exceed $325,000, and awards to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4) of no more than $15,000 in the aggregate.

By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of any fee or expense application, which will be decided at the Final Approval Hearing and paid only after Court approval.

**(4)     Plaintiffs Have Identified All Agreements Made in
Connection with the Proposed Settlement**

In addition to the Stipulation, Gatos and Plaintiffs have entered into a confidential Opt-Out Agreement providing specified options to terminate the settlement if Persons who otherwise would be Members of the Settlement Class, and timely choose to exclude themselves from the Settlement Class, purchased more than a certain number of shares of Gatos common stock.  (Stipulation ¶8.4.) As is standard in securities class action settlements, such agreements are not made public in order to avoid incentivizing individual class members to leverage the opt-out threshold to seek disproportionate individual settlements at the expense of the broader class.[7]  Pursuant to its terms, the Opt-Out Agreement may be submitted to the Court for *in camera* review.

---

[7] *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and

b.      **The Plan of Allocation Treats Class Members Equitably**

Finally, Rule 23(e)(2)(D) directs the Court to evaluate whether the proposed Settlement "treats class members equitably relative to each other." The Plan of Allocation satisfies this requirement because it allocates each Authorized Claimant their *pro rata* share of the Net Settlement Fund based on their recognized losses in transactions in Gatos Securities. Those recognized losses are calculated under the Plan of Allocation using estimates of artificial inflation at the time of purchase and sale for the Exchange Act claims, and for the Securities Act claims in a manner that generally reflects the statutory damages formula.

Specifically, the Plan of Allocation—developed by Lead Counsel with expert assistance—calculates a "Recognized Loss Amount" for each qualifying purchase or acquisition of Gatos common stock or call options (or sale of Gatos put options) listed on the Proof of Claim for which the claimant provides adequate documentation.

Transactions in Gatos common stock and options may result in Recognized Loss Amounts under the Exchange Act, with the calculation depending on when the claimant purchased and/or sold these securities and whether the claimant held them through the statutory 90-day look-back period after the end of the Class Period. *See* 15 U.S.C. § 78u-4(e).

Certain purchases of Gatos common stock between October 28, 2020 and August 18, 2021 may result in Securities Act Recognized Loss Amounts. The calculation of Securities Act Recognized Loss Amounts depends on the amount paid for these shares (not to exceed their offering price), whether they were held after January 25, 2022, and their price or value at the time of suit or the time of sale. *See* 15 U.S.C. § 78k(e).

---

is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

15

A claimant's "Recognized Claim" will be the sum of the claimant's Recognized Loss Amounts. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on their Recognized Claims in proportion to all Recognized Claims.

The Plan of Allocation is comparable to plans of allocation approved in other securities class actions, including in this Court. *See, e.g.*, *Crocs*, 306 F.R.D. at 692 ("The Recognized Claim formula helps to determine the basis upon which the Settlement Fund will be proportionally allocated and is based on consultation with plaintiffs' experts, the relative strengths and weaknesses of the Settlement Class claims, and the impact of the alleged misconduct by the Settling Defendants on the price of Crocs' securities at various times during the Settlement Class Period.").

**C.    The Court "Will Likely Be Able to" Certify the Proposed Settlement Class, Satisfying Rule 23(e)(1)(B)(ii)**

The Court will be able to certify the proposed Settlement Class because it meets each requirement under Rules 23(a) and (b)(3).

The proposed Settlement Class, which has been stipulated to by the Parties, consists of all Persons and entities who or which either (i) during the period from December 9, 2020 to January 25, 2022, both inclusive (the "Class Period"), purchased or otherwise acquired Gatos common stock listed on the NYSE, or, in domestic transactions, purchased or otherwise acquired publicly traded call options on Gatos common stock, and/or sold publicly traded put options on Gatos common stock, and were damaged thereby; or (ii) purchased or otherwise acquired Gatos common stock pursuant or traceable to the 2020 Registration Statement or the 2021 Registration Statement, in domestic transactions or on the NYSE, and were damaged thereby.[8]

---

[8] Excluded from the Settlement Class are: Defendants, the current and Class Period officers and directors of the Company, the members of the immediate families and the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person, any entity in which

16

### 1.     Numerosity – Rule 23(a)(1)

The Settlement Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   Gatos common stock traded on the NYSE, with over 69 million shares outstanding as of August 15, 2022 and an average daily volume of over 744,000 shares during the Class Period (ECF No. 54 ¶343).   "Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities," *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 205 F.R.D. 572, 577 (D. Colo. 2001), and numerosity is satisfied.[9]

### 2.     Commonality – Rule 23(a)(2)

Rule 23(a)(2) is satisfied because this action presents "questions of law or fact common to" the Settlement Class, including whether Defendants violated the federal securities laws; whether Defendants made any untrue statements of material fact or material omissions; whether the Exchange Act Defendants acted with scienter; whether reliance may be presumed under the fraud-on-the-market doctrine; and whether Settlement Class members suffered damages.  *See* ECF No. 54 ¶346.  Such common questions of law and fact readily satisfy the commonality requirement. *See, e.g.*, *Molycorp*, 2017 WL 4333997 at *8 ("common questions of law and fact concerning Defendants' liability turns on issues common to the Class, i.e., whether Defendants made material misrepresentations and/or omissions about HREEs"); *Crocs*, 306 F.R.D. at 686 (commonality

---

such excluded persons have or had a majority interest, and the Electrum Group, LLC; *provided*, *however*, that any "Investment Vehicle" shall not be excluded from the Settlement Class.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set by the Court.

[9] *See also Crocs*, 306 F.R.D. at 686 (finding "that the proposed Settlement Class satisfies Rule 23(a)(1)'s numerosity requirement" where "the Settling Parties submit that hundreds, if not thousands, of individuals or entities purchased Crocs shares during the relevant time period"); *Molycorp*, 2017 WL 4333997 at *5 ("numerosity requirement is sufficiently satisfied to warrant conditional class certification" where issuer "had approximately 56 million shares outstanding").

satisfied because "whether these material omissions and misrepresentations occurred is a factual and legal question that is common to the entire class and is capable of class wide resolution").

### 3.    Typicality – Rule 23(a)(3)

Rule 23(a)(3) is satisfied because Plaintiffs' claims "are typical of the claims" of the Settlement Class.  "Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Crocs*, 306 F.R.D. at 686 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  Here, like all other members of the Settlement Class, Plaintiffs purchased Gatos Securities at prices that were allegedly inflated, distorted, or maintained by Defendants' challenged statements and omissions.  *See* ECF No. 54 ¶344.  This satisfies typicality.  *See, e.g.*, *Molycorp*, 2017 WL 4333997 at *6 (typicality satisfied where "Lead Plaintiffs, like the representative plaintiffs and all Members of the Class, are alleged to have been damaged in the same way by Defendants' alleged conduct").

### 4.    Adequacy – Rule 23(a)(4)

Adequacy is satisfied because Plaintiffs and Plaintiffs' Counsel (a) have no "conflicts of interest with other class members," and (b) have "prosecute[d] the action vigorously on behalf of" the Settlement Class.  *Rutter*, 314 F.3d at 1187-88.  The adequacy of Plaintiffs and Plaintiffs' Counsel is further addressed at pages 7-8 above.

### 5.    Predominance and Superiority – Rule 23(b)(3)

As is typical in securities class actions, Rule 23(b)(3) is satisfied because "questions of law and fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See Crocs*, 306 F.R.D. at 689 (predominance "readily met" where "common questions of fact and law depend entirely upon the conduct of defendants" and "are

18

unaffected by the particularized conduct of individual class members"); *Molycorp*, 2017 WL 4333997 at \*8 (common questions predominate where "questions regarding Defendants' alleged misconduct and the harm caused by that misconduct are common to Members of the Class"). Further, a class settlement is a superior method for resolving this dispute because it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues." *Crocs*, 306 F.R.D. at 689.

## II.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

Finally, the form and content of the Notice should be approved because they meet the requirements of due process, the Federal Rules of Civil Procedure, and the PSLRA. Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. In addition, Rule 23(c)(2)(B) requires the Court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, the Notice and Long-Form Notice (Exs. A-1 and A-2 to the Stipulation) are written in plain language and apprise Settlement Class members of the nature of the litigation, including the claims and issues involved; the definition of the Settlement Class; the terms of the proposed Settlement; that the Court will exclude any Settlement Class member who requests exclusion; the procedures and deadlines for exclusion requests and objections; and the binding effect of a class judgment on Settlement Class members under Rule 23(c)(3)(B), among other disclosures.

The Notice and Long-Form Notice also satisfy the disclosure requirements for securities class settlements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). Specifically, they disclose: (1) the amount of the settlement on an aggregate and per-security basis (Notice at 2, 5; Long-Form Notice at 1-2), satisfying 15 U.S.C. § 78u-4(a)(7)(A); (2) the issues about which the parties

19

disagree (Notice at 5; Long-Form Notice at 3), satisfying 15 U.S.C. § 78u-4(a)(7)(B)(ii); (3) the maximum amount of attorneys' fees and litigation expenses that Lead Counsel will seek (including on a per-share basis) (Notice at 5-6; Long-Form Notice at 4 and Question 18), satisfying 15 U.S.C. § 78u-4(a)(7)(C); (4) the name, mailing address, and telephone number of Lead Counsel, who will be reasonably available to answer questions from Settlement Class members (Notice at 6; Long-Form Notice at 4 and Question 25), satisfying 15 U.S.C. § 78u-4(a)(7)(D); and (5) a brief statement explaining the reasons why the parties are proposing the settlement (Notice at 5; Long-Form Notice at 3 and Question 5), satisfying 15 U.S.C. § 78u-4(a)(7)(E).

Lead Counsel proposes that Epiq Class Action and Claims Solutions, Inc. ("Epiq"), a leading independent settlement and claims administrator, administer the notice and claims process. If the Court preliminarily approves the settlement, Epiq will disseminate the Notice to all identified potential Settlement Class Members. To do so, Epiq will utilize a list from Defendants' securities transfer agent of all persons who purchased or otherwise acquired Gatos Securities between October 28, 2020 and January 25, 2022, as well as Epiq's proprietary list of U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners. In addition, Epiq will publish the Summary Notice in *Investor's Business Daily*, transmit the Summary Notice over PR Newswire, provide digital notice by publishing banner advertisements on the Google Display Network and Yahoo! Finance websites that are linked to the settlement website, and post the Notice, Long-Form Notice, Proof of Claim and other materials on the case-specific website for the settlement. The parties have also agreed that, no later than five business days following the filing of the Stipulation with the Court, Gatos shall serve (or cause to be served) the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), *et seq*.

The proposed combination of mail, publication, and electronic notice satisfies Rule 23(c)(2)(B), which provides that "notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means."  This Court has approved class notice plans, like that proposed here, that utilize direct mail, press releases, and posting of notice information on a dedicated website.  *See Crocs*, 306 F.R.D. at 693.

## III.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

In the event the Court grants preliminary approval of the proposed Settlement, Plaintiffs respectfully propose the schedule below for settlement-related events.  The timing of each event is determined by the date the Preliminary Approval Order is entered and the date of the Final Approval Hearing; thus, upon entry of the Preliminary Approval Order, the Court need only schedule a date for the Final Approval Hearing.

| EVENT | DEADLINE |
|---|---|
| Deadline for Claims Administrator to publish the Summary Notice in a national news publication and over a national newswire service | 14 calendar days from entry of the Preliminary Approval Order (Proposed Order at ¶8) |
| Deadline for Claims Administrator to commence mailing of the Notice to Settlement Class members (the "Notice Date") and to post copies of the Notice, Long-Form Notice, Proof of Claim, Stipulation, and its exhibits to a website for the Litigation (www.GatosSecuritiesLitigation.com) | 21 calendar days from entry of the Preliminary Approval Order (Proposed Order at ¶8) |
| Deadline to submit written requests for exclusion | 45 calendar days from Notice Date (Proposed Order at ¶12) |
| Deadline to submit Proof of Claim | 90 calendar days from Notice Date (Proposed Order at ¶11) |
| Deadline for motions for final approval of the Settlement, Plan of Allocation, and for attorneys' fees and expenses | 35 calendar days prior to the Final Approval Hearing (Proposed Order at ¶15) |
| Deadline for objections and statements of intention to appear at the Final Approval Hearing | 21 calendar days prior to the Final Approval Hearing (Proposed Order at ¶13) |
| Deadline for replies to any Objections | 7 calendar days prior to the Final Approval Hearing (Proposed Order at ¶15) |

| Deadline for Lead Counsel to file with the Court proof of mailing and publication of the Notice, Long-Form Notice, Proof of Claim, Summary Notice, and Stipulation and its exhibits | No later than 7 calendar days prior to the Final Approval Hearing (Proposed Order at ¶8) |
|---|---|
| Final Approval Hearing | The later of October 24, 2023 or 90 calendar days from entry of the Preliminary Approval Order (Proposed Order at ¶4) |

## CONCLUSION

Plaintiffs respectfully request that the Court grant this unopposed motion and enter the agreed-upon proposed Preliminary Approval Order, which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Settlement Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

Dated:  July 13, 2023

s/ Kathryn A. Reilly
Michael L. O'Donnell
Kathryn A. Reilly
Daniel N. Guisbond
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:  odonnell@wtotrial.com
          reilly@wtotrial.com
          guisbond@wtotrial.com

Liaison Counsel for
Lead Plaintiff Bard Betz

s/ Joseph A. Fonti
Joseph A. Fonti
Evan A. Kubota
Bleichmar Fonti & Auld LLP
7 Times Square, 27th Floor
New York, NY 10036
Telephone:    212.789.1340
Facsimile:    212.205.3960
Email: jfonti@bfalaw.com
          ekubota@bfalaw.com

Counsel for Lead Plaintiff Bard Betz and
Lead Counsel for the Class


Brian Schall
The Schall Law Firm
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone:    424.303.1964
Email: brian@schallfirm.com

Additional Counsel for Lead Plaintiff Bard
Betz and Named Plaintiff Jude Sweidan

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 13, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


*/s/ Joseph A. Fonti*