IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00453-PAB-KAS

MICHAEL BILINSKY, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

GATOS SILVER, INC.,
STEPHEN ORR,
ROGER JOHNSON,
PHILIP PYLE,
JANICE STAIRS,
ALI ERFAN,
IGOR GONZALES,
KARL HANNEMAN,
DAVID PEAT,
CHARLES HANSARD, and
DANIEL MUÑIZ QUINTANILLA,

      Defendants.

---

## ORDER

---

This matter comes before the Court on Plaintiffs' Unopposed Motion for

Preliminary Approval of Class Settlement and Authorization to Disseminate Notice of

Settlement [Docket No. 82].  Lead plaintiff Bard Betz[1] and plaintiff Jude Sweidan

(together, "representative plaintiffs") filed the motion for preliminary approval of the class

action settlement.  *Id.* at 1.  Defendants do not oppose the motion.  *Id.* at 2.  After the

motion was filed, the parties jointly notified the Court that they had amended the

---

[1] On June 3, 2022, Magistrate Judge Kristen L. Mix appointed Bard Betz as lead
plaintiff in this matter.  Docket No. 49 at 7.

settlement agreement and filed a copy of the amended settlement agreement.  Docket Nos. 85, 85-1.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

This case arises out of defendants' alleged misleading statements and omissions concerning the mineral reserves at the Cerro Los Gatos mine in Mexico.  Docket No. 82-1 at 7.  Plaintiffs allege that Gatos Silver, Inc. ("Gatos") and the individual defendants are liable for "violations of the Securities Exchange Act of 1934 and the Securities Act of 1933 resulting from materially false and misleading statements, and omissions of material facts required to be disclosed."  *Id.*; *see also* Docket No. 54 at 12.  Specifically, plaintiffs allege that defendants "materially overstated [the mine's] reserves and resources in Gatos's October 2020 IPO, the July 2021 Offering, and other SEC filings and oral statements . . . based on a 2020 Technical Report that contained material errors."  Docket No. 82-1 at 7; Docket No. 54 at 12-20, ¶¶ 1-22.  Defendants deny these allegations.  Docket No. 82-1 at 7.

On June 13, 2023, the parties engaged in private mediation before Robert Meyer of Judicial Arbitration and Mediation Services, Inc.  *Id.* at 9.  The parties exchanged multiple demands and counteroffers, and, at the conclusion of the session, Mr. Meyer made a formal mediator's proposal that the case settle for $21,000,000.  *Id.*  The parties accepted the proposal, *id.*, and signed a settlement agreement.  Docket No. 85-1.

## II.  PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be

given to the class so that interested class members may object to the fairness of the settlement.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives.*"  See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso ("Shook I")*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous

analysis," that the requirements of Rule 23 are met, and frequently a district court's

"'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying

claim." *Dukes*, 564 U.S. at 350-51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471

F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations

is not lessened by overlap between a Rule 23 requirement and a merits issue, even a

merits issue that is identical with a Rule 23 requirement").

A district court may certify a class action if the proposed class satisfies the

prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three

types of classes identified in Rule 23(b).  In the typical case where the plaintiff applies

for class certification, plaintiff bears the burden of proving that Rule 23's requirements

are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010)

(citing *Shook I*, 386 F.3d at 968).  Here, the representative plaintiffs move for

certification for the purposes of settlement and defendants do not oppose the motion.

Docket No. 46 at 1-2.  Rule 23(a) requires that (1) the class be so numerous that joinder

is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims of the representative parties are typical of those of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class.  Fed.

R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242,

249 (2d Cir. 2011).  A class action may be sustained if these requirements are satisfied

and the class meets the requirements of one of the categories of Rule 23(b).  Fed. R.

Civ. P. 23(b).

Plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3).  Docket

No. 82-1 at 22-23.  Under that provision, plaintiffs must show that "questions of law or

fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  To certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  However, all of the other Rule 23 requirements apply and demand heightened attention in the settlement context because the Court generally lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the Court must separately evaluate whether the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e).[2]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiffs meet the requirements for preliminary approval, the Court will direct notice to all class members who would be bound by the proposal and hold a fairness hearing to determine if

---

[2] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Though the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the Court's preliminary inquiry and thus it is appropriate to review them.

A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## III.  ANALYSIS OF PROPOSED SETTLEMENT AGREEMENT

### A.  Settlement Agreement

The motion for preliminary approval seeks certification of a Settlement Class consisting of the members of the Securities Act Settlement Class and the Exchange Act Settlement Class. Docket No. 82-1 at 20; Docket No. 85-1 at 13, ¶ 1.52. The Securities Act Settlement Class consists of:

all Persons and entities who, in domestic transactions or on the NYSE, purchased or otherwise acquired Gatos common stock pursuant or traceable to the 2020 Registration Statement or the 2021 Registration Statement, and were damaged thereby.

6

Docket No. 85-1 at 12, ¶ 1.49.   The Exchange Act class consists of:

> (i) all Persons and entities who purchased or otherwise acquired Gatos common stock listed on the NYSE, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby; (ii) all Persons and entities who, in domestic transactions, purchased or otherwise acquired publicly traded call options on Gatos common stock, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby; and/or (iii) all Persons and entities who, in domestic transactions, sold publicly traded put options on Gatos common stock, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby.

*Id.* at 7, ¶ 1.16.   The proposed  Settlement Class excludes:

> Defendants, the current and Class Period officers and directors of the Company, the members of the immediate families and the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person, any entity in which such excluded persons have or had a majority interest, and the Electrum Group, LLC; *provided*, *however*, that any "Investment Vehicle" shall not be excluded from the Settlement Class.

*Id.* at 13, ¶ 1.52.

The settlement agreement provides for a net settlement fund of $21,000,000.  *Id.* at 15, ¶ 2.1.  The class members will receive *pro rata* shares of the net fund based on their recognized losses in transactions in Gatos securities.  Docket No. 82-1 at 19; Docket No. 85-2 at 29, ¶ 25; *see* Docket No. 85-1 at 26, ¶ 6.10 (the fund shall be distributed "substantially in accordance with a Plan of Allocation described in the Notice and approved by the Court").  The settlement agreement permits lead counsel to seek attorneys' fees and costs and permits the representative plaintiffs to seek an award pursuant to 15 U.S.C. § 78u-4(a)(4).  Docket No. 85-1 at 28, ¶ 7.1; *see* 15 U.S.C. § 78u-4(a)(4).  Lead counsel will seek fees amounting to no more than 28% of the settlement fund, costs of no more than $325,000, and service awards for the representative

plaintiffs of no more than $15,000 in the aggregate.  Docket No. 82-1 at 18; Docket No. 85-2 at 5.

The parties have agreed to use Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the notice provider and claims administrator in this case.  *Id.*; Docket No. 85-1 at 6, ¶ 1.6.  The motion proposes direct and individual notice, in the form of a self-mailer,[3] to be distributed to class members though direct mail.  Docket No. 82-1 at 16. The claims administrator will also establish a case-specific website where class members can access a "Long-Form Notice" which contains more details about the settlement than will be included in the self-mailer, and other relevant documents.  *Id.* Class members will be able to submit claims electronically or request a paper copy of the Proof of Claim form[4] on the website.  *Id.*  The claims administrator will also establish a toll-free telephone line through which class members can contact the claims administrator and request a paper copy of the Proof of Claim form.  *Id.*  In addition, plaintiffs attached to their motion a "summary notice" summarizing the terms of settlement and the steps a class member must take in order to receive part of the settlement fund, Docket No. 82-7, which plaintiffs propose publishing in *Investors' Business Daily* and disseminating through PR Newswire and advertisements on the Google Display Network and Yahoo! Finance websites.  Docket No. 82-1 at 16.  The motion proposes that class members who seek to exclude themselves may do so in writing until 45 days after the class administrator has mailed notice to the class

---

[3] A "self-mailer" is a folded document with eight 10.5" x 6" panels.  Docket No. 82-1 at 16.

[4] The "Proof of Claim form" is the form a class member must submit to receive a payment from the settlement fund.  Docket No. 82-4 at 3.

members ("Notice Date"), that class members must submit their Proof of Claim form before 90 days after the Notice Date, and that class members may submit objections and statements of intention to appear at the fairness hearing until 21 days before the fairness hearing. *Id.* at 25.

### B. Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Some courts have held that numerosity may be presumed after a certain number; however, the Tenth Circuit has never adopted a presumption of numerosity. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification).

In the context of securities litigation, this Court has found that a proposed settlement class satisfied the numerosity requirement for purposes of preliminary approval because it was "likely that the number of individuals that qualif[ied] for the relevant class [would] be in the thousands." *In re Crocs, Inc. Securities Litig.*, 306 F.R.D. 672, 686 (D. Colo. 2014). Plaintiffs state that there are an estimated 30,000 potential class members. Docket No. 82-1 at 17. Further, "[c]ourts generally assume that the numerosity requirement is met in cases involving nationally traded securities." *In re Ribozyme Pharm., Inc. Sec. Litig.,* 205 F.R.D. 572, 577 (D. Colo. 2001) (citing *In re Intelcom Group, Inc.*, 169 F.R.D. 142, 148 (D. Colo. 1996)). Plaintiffs indicate that Gatos common stock traded on the New York Stock Exchange. Docket No. 82-1 at 21.

Therefore, the Court finds that the proposed settlement class satisfies Rule 23(a)(1)'s numerosity requirement.

### 2. Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist.  *Devaughn*, 594 F.3d at 1195.  Commonality requires that plaintiffs demonstrate the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Even a single common question will satisfy commonality.  *Dukes*, 564 U.S. at 359.

Here, there are many common questions of law and fact.  The motion states that common issues include "whether Defendants violated the federal securities laws; whether Defendants made any untrue statements of material fact or material omissions; whether the Exchange Act Defendants acted with scienter; whether reliance may be presumed under the fraud-on-the-market doctrine; and whether Settlement Class members suffered damages."  Docket No. 82-1 at 21.  The Court finds that the proposed class satisfies Rule 23(a)(2)'s commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the representative plaintiffs such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The interests and claims of the representative plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the representative plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198-99.  Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become to become a major focus of the litigation.'"  *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation omitted).

The motion states that, "like all other members of the Settlement Class, [representative plaintiffs] purchased Gatos Securities at prices that were allegedly inflated, distorted, or maintained by Defendants' challenged statements and omissions."  Docket No. 82-1 at 22.  Furthermore, the claims of the representative plaintiffs do not appear to be subject to any unique defenses.  *See Marcus*, 687 F.3d at 599.  Therefore, the Court finds that the proposed class satisfies Rule 23(a)(3)'s typicality requirement.

### 4. Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted).  As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Id*. at 625.  To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id*. at 625-26.  The Court has found that the representative plaintiffs bring claims typical of the proposed class.  *See* Section III.B.3, *supra*.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  *Ellis*, 657 F.3d at 985.

With regard to adequacy, the Court finds that the interests of the class are fairly and adequately protected by the representative plaintiffs and lead counsel.  The motion states that the representative plaintiffs' "interest in obtaining the largest possible recovery is fully aligned with the rest of the Settlement Class."  Docket No. 82-1 at 11.  Further, there is nothing in the record to show any conflict of interest between the representative plaintiffs or plaintiffs' counsel and the rest of the class.  Moreover, the settlement agreement does not raise any obvious concerns regarding interclass conflicts.  *See Amchem*, 521 U.S. at 611-12 (noting interclass conflict between the exposure-only asbestos plaintiffs and those already afflicted with asbestos related disease).  There is also no evidence that one set of potential class members is at risk of benefitting from the settlement agreement to the detriment of another set of class members.  Class members will be able to challenge this issue at the fairness hearing if they believe otherwise.

Regarding the second adequacy factor, the motion argues that the representative plaintiffs and plaintiffs' counsel have prosecuted the action on behalf of the settlement class.  Docket No. 82-1 at 11, 22.  It states that plaintiffs "retained counsel who are highly experienced in complex securities litigation." *Id.* at 11.  In her ruling appointing Bleichmar Fonti & Auld LLP ("BFA") as lead counsel in this action, Judge Mix came to the same conclusion, noting that "BFA is among the foremost securities class action law firms in the country."  Docket No. 49 at 6.  Furthermore, plaintiffs' counsel negotiated an early-stage settlement that will guarantee significant, prompt cash recovery for settlement class members.  Docket No. 82-1 at 12.  There are no questions regarding the competency of the proposed class counsel or their ability to prosecute this action

and, to the extent any such questions do arise, they will be considered at the fairness hearing.  Accordingly, at this preliminary stage, because the representative plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that the representative plaintiffs have satisfied Rule 23(a)(4)'s requirements.  *See Rutter*, 314 F.3d at 1188.

### C.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be

certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement." *Amchem*, 521 U.S. at 623.

The motion argues that, "[a]s is typical in securities class actions, Rule 23(b)(3) is satisfied" because questions of law and fact predominate over any questions affecting only individual members.  Docket No. 82-1 at 22.  Common questions include "whether Defendants violated the federal securities laws; whether Defendants made any untrue statements of material fact or material omissions; whether the Exchange Act Defendants acted with scienter; whether reliance may be presumed under the fraud-on-the-market doctrine; and whether Settlement Class members suffered damages." *Id.* at 21.  Because the common questions of law and fact depend upon defendants' conduct, they predominate as they are unaffected by the particularized conduct of individual class members.  Furthermore, courts have similarly found that common issues in securities class action cases predominate over individualized issues.  *See Crocs*, 306 F.R.D. at 689; *Ribozyme Pharm.*, 205 F.R.D. at 578-79; *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 WL 4333997, at *8 (D. Colo.  Feb. 15, 2017). Accordingly, the Court finds that common issues of law and fact predominate here.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation,

saving both class members and defendants significant time and legal costs to adjudicate common legal and factual issues.  Thus, given that the class members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision to similarly situated persons.  Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104.  Therefore, because the settlement class members will receive the same type of relief, and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation.  *See Amchem*, 521 U.S. at 623.

### D.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and

honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

It is unclear to what extent a court on a motion for preliminary approval of a proposed class settlement must delve into these factors.  However, based on the information available to the Court, the Court notes the following, which weighs in favor of preliminary approval.  The proposed settlement agreement is the product of significant negotiations and discussion between the parties.  The parties participated in an all-day mediation session before Mr. Meyer on June 13, 2023.  Docket No. 82-1 at 9; Docket No. 85-1 at 4, ¶ H.  At the conclusion of the session, Mr. Meyer made a formal mediator's proposal that the case settle for $21,000,000, which the parties accepted. Docket No. 82-1 at 9; Docket No. 85-1 at 4, ¶ H.  There is no evidence that the settlement agreement was the result of a collusive agreement between the parties.  The Court therefore finds that the negotiations were done fairly and honestly.  Furthermore, plaintiffs note that the action "involves complex and uncertain legal and factual issues,"

noting that "over 50% of securities class actions fail at the pleading stage" and that, at the time the parties reached settlement agreement, defendants had filed a motion to dismiss that the Court had not yet ruled on.  Docket No. 82-1 at 13-14.  Defendants also deny all of plaintiffs' allegations and do not admit any liability.  *Id.* at 7.  Therefore, the Court finds that serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief.  Plaintiffs argue that this factor weighs in favor of preliminary approval based on "the risks on the merits—along with Gatos's financial constraints and the prospect of protracted further litigation."  *Id.* at 13.  As noted above, plaintiffs concede the complexity and uncertainty of the legal and factual issues in the case.  *Id.* at 13-14.  Plaintiffs further argue that, "even if Plaintiffs defeated Defendants' motion to dismiss . . .  Defendants likely would challenge class certification and other elements of certain claims, including loss causation and damages.  Accordingly, absent the proposed Settlement, there was a real risk that the Settlement Class would have recovered significantly less than the total Settlement Amount—or nothing at all."  *Id.* at 14.  In addition, "Gatos's financial position greatly diminishes the prospect of any cash recovery meaningfully larger than the proposed Settlement."  *Id.* at 15.  Finally, if the litigation were to continue, the settlement class could be deprived of recovery "for years, magnifying the risk that Gatos's financial condition could further decline over the intervening period—particularly since Gatos's only production mine will run out of ore by 2028."  *Id.*  Accordingly, the Court finds that the value of immediate recovery outweighs the possibility of future relief after litigation.

With regard to the fourth factor, it is evident that the parties believe that the settlement agreement is fair and reasonable.  Plaintiffs' counsel has extensive experience in securities litigation and states that the settlement of $21,000,000 is "an outstanding result given Gatos's serious financial constraints, the maximum theoretical damages, and the risks and delay of continued litigation." *Id.* at 5.  Certifying the class will allow the Court to determine whether there are other members of the class who challenge the fairness of the parties' proposed settlement agreement.  Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536–38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *cf. In re Crocs*, 2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness is sufficient to preliminarily approve the terms of the proposed settlement agreement.

## IV.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id.* Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

The parties agree to provide direct and individual notice, in the form of a self-mailer, to be distributed to class members though direct mail and in the form of a long-form notice accessible on the settlement website. Docket No. 82-1 at 16. The proposed notices in this case provide class members with information regarding the class action, the terms of the settlement agreement, attorneys' fees and expenses, the fairness hearing,[5] how individuals can participate in the settlement, and how individuals can opt out of the class or object to the terms of the settlement agreement. *Id.* at 23-25;

---

[5] The notices appear to refer to the fairness hearing as a "Final Approval Hearing." Docket No. 82-4 at 5; Docket No. 85-2 at 11. Before distributing the notices, the parties should replace "Final Approval Hearing" with "Fairness Hearing" since that is how the Court will refer to the hearing.

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  The class administrator will disseminate the notices using a list from defendants' securities transfer agent of all persons who purchased or otherwise acquired Gatos securities between October 28, 2020 and January 25, 2022, as well as Epiq's proprietary list of U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners.  Docket No. 82-1 at 24.  Based on the foregoing, the Court is satisfied that the parties' proposed notice is reasonably calculated to apprise the absent class members of the action.  *See In re Integra*, 262 F.3d at 1111.

In addition, to the notice requirements of Rule 23, the Private Securities Litigation Reform Act ("PSLRA") requires that any proposed settlement agreement include certain information regarding the amount of the settlement, the reasons why the parties disagree as to the amount that would be recoverable if the plaintiffs prevailed at trial, the amount of attorney fees and costs that will be sought, and the contact information for Lead Plaintiffs' counsel.  15 U.S.C. § 78u-4(a)(7).  The self mailer and the long form notice each contain the disclosures required by the PSLRA.  Docket No. 82-4 at 2, 5-6; Docket No. 85-2 at 2-5.  Therefore, the Court will approve the proposed notice plan, the self-mailer, and the amended long form notice.

## V.  CLASS COUNSEL

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P. 23(g).  In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any

other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  On June 2, 2022, Judge Mix appointed Mr. Betz as lead plaintiff and approved his selection of BFA as lead counsel, citing the firm's expertise and extensive experience with securities class action lawsuits.  Docket No. 49 at 6. Furthermore, the motion for preliminary approval details the "exhaustive investigation" that BFA conducted before filing an amended complaint, including analyzing the mining industry and applicable regulations, working with consulting experts, and interviewing former Gatos employees.  Docket No. 82-1 at 7-8.  For this reason and for the reasons Judge Mix cited in her order, the Court will appoint BFA as class counsel.

## VI.  ADDITIONAL PROCEDURES

The Court will adopt the notice, claim submission, fairness hearing, and objection schedules proposed by the plaintiffs.  *See id*. at 25-26.  The Court appoints Epiq as the claims administrator.  Accordingly, the following deadlines apply:

| Event | Deadline |
|---|---|
| Deadline for Claims Administrator to publish the Summary Notice in a national news publication and over a national newswire service | 14 calendar days from entry of the Preliminary Approval Order |
| Deadline for Claims Administrator to commence mailing of the Notice to Settlement Class members (the "Notice Date") and to post copies of the Notice, Long-Form Notice, Proof of Claim, Stipulation, and its exhibits to a website for the Litigation (www.GatosSecuritiesLitigation.com) | 21 calendar days from entry of the Preliminary Approval Order |
| Deadline to submit written requests for exclusion | 45 calendar days from Notice Date |
| Deadline to submit Proof of Claim | 90 calendar days from Notice Date |
| Deadline for motions for final approval of the Settlement, Plan of Allocation, and for attorneys' fees and expenses | 35 calendar days prior to the fairness hearing |

| Deadline for objections and statements of intention to appear at the fairness hearing | 21 calendar days prior to the fairness hearing |
|---|---|
| Deadline for replies to any Objections | 7 calendar days prior to the fairness hearing |
| Deadline for Lead Counsel to file with the Court proof of mailing and publication of the Notice, Long-Form Notice, Proof of Claim, Summary Notice, and Stipulation and its exhibits | No later than 7 calendar days prior to the fairness hearing |

Additionally, the parties shall contact the Court's chambers to set a date for the fairness hearing within seven days of the entry of this order.

## VII. CONCLUSION

Therefore, it is

**ORDERED** that Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Authorization to Disseminate Notice of Settlement [Docket No. 82] is **GRANTED**.  It is further

**ORDERED** that the Joint Request for Status Conference [Docket No. 86] is **DENIED** as moot.  It is further

**ORDERED** that the parties shall contact the Court's chambers within seven days of the entry of this order to set a date for the fairness hearing.


DATED February 29, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge