UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00453-PAB-KAS

MICHAEL BILINSKY, Individually and on Behalf of All Others
Similarly Situated,

        Plaintiff,

v.

GATOS SILVER, INC.,
STEPHEN ORR,
ROGER JOHNSON,
PHILIP PYLE,
JANICE STAIRS,
ALI ERFAN,
IGOR GONZALES,
KARL HANNEMAN,
DAVID PEAT,
CHARLES HANSARD, and
DANIEL MUÑIZ QUINTANILLA,

        Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL AND WTO'S
MOTION FOR AWARDS OF ATTORNEYS' FEES, LITIGATION EXPENSES,
<u>AND REASONABLE COSTS AND EXPENSES TO PLAINTIFFS</u>**

---

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

I.      THE FEE APPLICATION SHOULD BE APPROVED ................................................... 4

        A.      Counsel Is Entitled to a Fee Award from the Common Fund................................. 4

        B.      The Requested Fee Is a Reasonable Percentage of the Common Fund and
                Consistent with Awards in Similar Cases in This Circuit....................................... 4

        C.      The *Johnson* Factors Support the Requested Fee ..................................................... 6

                1.      The Amount Involved and Results Obtained.............................................. 6

                2.      The Novelty and Difficulty of the Questions Presented, and the
                        Skill Required to Represent the Class........................................................ 7

                3.      Counsel's Experience, Reputation, and Ability......................................... 9

                4.      The Contingent Nature of the Fee............................................................. 10

                5.      The Time and Labor Expended by Plaintiffs' Counsel ........................... 11

        D.      Plaintiffs and the Proposed Class Support the Requested Fee.............................. 13

II.     THE EXPENSE APPLICATION IS REASONABLE ..................................................... 14

III.    PLAINTIFFS' COSTS AND EXPENSES ARE REASONABLE................................... 15

CONCLUSION........................................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Merit Energy Co.*,
No. 07-cv-00916-LTB-BNB, 2009 WL 3378526 (D. Colo. Oct. 20, 2009) .............................. 6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................................. 4

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okl.*,
8 F.3d 722 (10th Cir. 1993) ..................................................................................................... 12

*Cook v. Rockwell Int'l Corp.*,
No. 90-cv-00181-JLK, 2017 WL 5076498 (D. Colo. Apr. 28, 2017)................................... 4

*Duran v. Koehler*,
No. 10-cv-01569, 2014 WL 4197578 (D. Colo. Aug. 25, 2014).............................................. 12

*In re Cendant Corp. Litigation*,
264 F.3d 201 (3rd Cir. 2001) ................................................................................................... 13

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ............................................................................................... 7

*In re Crocs, Inc. Sec. Litig.*,
No. 07-cv-02351, 2014 WL 4670886 (D. Colo. Sept. 18, 2014)...................................... passim

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ....................................................................................... 8

*In re Mammoth Energy Services, Inc. Sec. Litig.*,
No. 19-cv-522 (W.D. Okla. Sept. 21, 2021)............................................................................... 5

*In re Molycorp Inc. Sec. Litig.*,
No. 1:12-cv-00292-RM-KMT, 2017 WL 11598681 (D. Colo. June 16, 2017) ....................... 13

*In re NU Skin Enter., Inc.*,
No. 214-cv-00033-JNP-BCW, 2016 WL 6916486 (D. Utah Oct. 13, 2016) ........................ 5, 9

*In re Oppenheimer Champion Income Fund Sec. Fraud Class Actions*,
No. 09-cv-386-JLK-KMT, 2011 WL 13217584 (D. Colo. Sept. 30, 2011)............................. 12

*In re Qwest Comms. Int'l, Inc. Sec. Litig.*,
No. 01-cv-01451-REB-CBS, 2006 WL 8429707 (D. Colo. Sept. 29, 2006) ................. 8, 12, 13

*In re Rhythms Sec. Litig.*,
No. 02-cv-35-JLK-CBS, 2009 WL 10690662 (D. Colo. Apr. 3, 2009) ................................... 5

*In re Sandridge Energy, Inc. Sec. Litig.*,
No. 12-cv-1341 (W.D. Okla. Dec. 30, 2022).................................................................................. 5

*In re Urethane Antitrust Litig.*,
No. 04-cv-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) .................................................. 12

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1979) ..................................................................................................... 6

*Martin v. Quartermain*,
732 F. App'x 37 (2d Cir. 2018) ................................................................................................. 2

*McKeon v. Int. Pizza LLC*,
No. 18-cv-0932-WJM-KLM, 2020 WL 6782238 (D. Colo. Nov. 18, 2020) ........................... 14

*Missouri v. Jenkins*,
491 U.S. 274 (1989)................................................................................................................... 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................................... 2

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
No. 19-cv-0124-WJM-SKC, 2024 WL 98387 (D. Colo. Jan. 1, 2024)..................................... 5

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
No. 17-cv-0304-WJM-NRN, 2021 WL 2981970 (D. Colo. July 15, 2021)......................... 5, 15

*Shaw v. Interthinx, Inc.*,
No. 13-cv-01229-REB-NYW, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ........................... 6

*Tuten v. United Airlines, Inc.*,
41 F. Supp. 3d 1003 (D. Colo. 2014)....................................................................................... 11

*Voulgaris v. Array Biopharma Inc.*,
No. 17-cv-02789-KLM, 2021 WL 6331178 (D. Colo. Dec. 3, 2021)............................... 4, 8, 14

*Voulgaris v. Array Biopharma, Inc.*,
60 F.4th 1259 (10th Cir. 2023) ......................................................................................... passim

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
No. 14-cv-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)................................. 13

**STATUTES**

15 U.S.C. § 78u.................................................................................................. 1, 3, 10, 15

**INTRODUCTION**

The Court has preliminarily approved the proposed Settlement to resolve this securities class action in exchange for a cash payment of $21,000,000—an outstanding result given Gatos's serious financial constraints, the realistically recoverable damages, and the risks and delay of continued litigation.[1]

Lead Counsel Bleichmar Fonti & Auld LLP ("BFA") and Wheeler Trigg O'Donnell LLP ("WTO") respectfully seek (a) an award of attorneys' fees in the amount of 28% of the Settlement Fund; (b) payment of litigation expenses in the amount of $226,314; and (c) combined awards of $15,000 to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4).

First, the requested 28% fee is reasonable in light of the outstanding result achieved for the benefit of the Settlement Class. The Tenth Circuit has "express[ed] a preference for the percentage-of-the-fund approach," "which awards class counsel a share of the benefit achieved for the class." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 (10th Cir. 2023).

Comparable fee percentages have regularly been awarded in securities class actions in this District and Circuit. (*Infra* at 4-5.) Indeed, as this Court has recognized, "[c]ourts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351, 2014 WL 4670886, at *3 (D. Colo. Sept. 18,

---

[1] Capitalized terms not defined herein have the meanings stated in the Amended Class Action Complaint for Violations of the Securities Laws (ECF No. 54), the Stipulation and Agreement of Settlement dated September 12, 2023 (ECF No. 85-1), and the Joint Declaration of Joseph A. Fonti and Kathryn A. Reilly in Support of: (I) Plaintiffs' Motion for Final Approval of the Settlement and Approval of the Plan of Allocation and (II) Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs (the "Joint Declaration" or "Joint Decl."). Citations omitted unless otherwise stated.

2014).  The requested fee also aligns with the median award of 27.5% in securities class action settlements of comparable size.  (*Infra* at 5.)

The relevant *Johnson* factors also support the requested fee, including the exceptional result obtained; the novelty and difficulty of the questions presented; counsel's experience and ability; the contingent nature of the fee; and the substantial time and labor expended by counsel.

In particular, Plaintiffs' Counsel achieved the $21 million cash Settlement by meticulously investigating and developing detailed allegations of Gatos's overstated mineral reserves and financial misstatements driven by the reserve issues.[2]  The Amended Complaint—developed with the assistance of consulting experts on mining and forensic accounting—alleged that the 2020 Technical Report for Gatos's CLG mine inflated mineral reserves due to material errors, including the misuse of software to add ore that did not exist.  Notably, months after Plaintiffs filed the Amended Complaint, Gatos admitted on October 3, 2022, that the 2020 Technical Report contained "material and compounding errors," including an incorrect software parameter—the same alleged error identified in the Amended Complaint months earlier.

Plaintiffs' Counsel also devoted significant effort to extensive briefing on Defendants' motion to dismiss, which presented significant risks and raised novel and challenging questions, including the application of the Supreme Court's decision in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015), and the Second Circuit's decision in *Martin v. Quartermain*, 732 F. App'x 37 (2d Cir. 2018), to alleged misstatements that Defendants characterized as opinions.  Defendants further argued that Plaintiffs failed to allege scienter,

---

[2] "Plaintiffs' Counsel" refers collectively to Lead Counsel, WTO, The Schall Law Firm ("Schall"), and The Law Offices of Susan R. Podolsky ("Podolsky").

arguing that Defendants reasonably relied on their expert Tetra Tech instead of another expert who opined that the 2020 Technical Report contained errors.

While Defendants' arguments raised a significant risk of dismissal at the pleading stage—and further litigation carried additional risks, including potentially case-ending outcomes at summary judgment, *Daubert* motions, trial, and appeals—Plaintiffs' Counsel invested 2,210.55 hours (or $1,853,045) of effort on a fully contingent basis. That work led to a full-day mediation where Defendants agreed to settle this case for $21 million in cash—a highly favorable result, particularly given Gatos' limited resources and the prospect of lengthy further litigation with no assurance of any recovery.

In short, the requested fee is comparable to percentages awarded in this District, Circuit, and nationally, and supported by the relevant *Johnson* factors. And while the Tenth Circuit has indicated that a lodestar cross-check is not required, the requested fee translates to a 3.17 lodestar multiplier, consistent with multipliers awarded in securities class actions in this Circuit.

Second, the requested reimbursement of $226,314 in litigation expenses is reasonable because these expenses were necessarily incurred to develop the allegations of this complex case, which required Plaintiffs' Counsel to consult with experts and oversee a detailed investigation.

Finally, the requested awards to Plaintiffs of $15,000 in total are reasonable, consistent with the PSLRA's provision for "awards of reasonable costs and expenses (including lost wages) directly relating to the representation of the class," 15 U.S.C. §78u-4(a)(4), and will compensate Plaintiffs for the time they devoted to this action on behalf of the Settlement Class.

## ARGUMENT

### I.    THE FEE APPLICATION SHOULD BE APPROVED

#### A.    Counsel Is Entitled to a Fee Award from the Common Fund

Under the common-fund doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Array Biopharma*, 60 F.4th at 1263 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

Courts have "long recognized that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives significant benefit." *Cook v. Rockwell Int'l Corp.*, No. 90-cv-00181-JLK, 2017 WL 5076498, at *1 (D. Colo. Apr. 28, 2017). In addition, "awards of attorneys' fees from a common fund should serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2021 WL 6331178, at *11 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023).

#### B.    The Requested Fee Is a Reasonable Percentage of the Common Fund and Consistent with Awards in Similar Cases in This Circuit

In awarding attorneys' fees in connection with a common-fund class settlement, the Tenth Circuit has "express[ed] a preference for the percentage-of-the-fund approach," "which awards class counsel a share of the benefit achieved for the class." *Array Biopharma*, 60 F.4th at 1263.

Here, Lead Counsel and WTO request a fee of 28% of the Settlement Fund. The requested fee is reasonable in comparison with the fee percentages regularly awarded in other securities class actions in this District and Circuit. Indeed, the requested 28% fee is below the typical award of

33%.  *See id.* at 1264 (affirming district court's determination that 33% award in $8.5 million securities class settlement "falls within the range of fee percentages awarded in securities class actions and other comparable complex class actions in this Circuit"); *Crocs*, 2014 WL 4670886 at *3 ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund.").

For example, in *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 19-cv-0124-WJM-SKC, 2024 WL 98387, at *8 (D. Colo. Jan. 1, 2024), a $27 million securities settlement, Judge Martinez awarded attorneys' fees of 30%.  Similar, and higher, fee percentages have regularly been awarded in other securities class settlements in this Circuit.  *See, e.g.*, *Crocs*, 2014 WL 4670886 at *5 (awarding 30% of $10 million settlement); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 WL 2981970, at *4 (D. Colo. July 15, 2021) (awarding 30% of $135 million settlement); *In re Rhythms Sec. Litig.*, No. 02-cv-35-JLK-CBS, 2009 WL 10690662, at *4 (D. Colo. Apr. 3, 2009) (awarding 30% of $17.5 million settlement); *In re Sandridge Energy, Inc. Sec. Litig.*, No. 12-cv-1341 (W.D. Okla. Dec. 30, 2022), ECF No. 592 (awarding 33% of $21.8 million settlement); *In re Mammoth Energy Services, Inc. Sec. Litig.*, No. 19-cv-522 (W.D. Okla. Sept. 21, 2021), ECF No. 142 (awarding 30% of $11 million settlement); *In re NU Skin Enter., Inc.*, No. 214-cv-00033-JNP-BCW, 2016 WL 6916486, at *1 (D. Utah Oct. 13, 2016) (awarding 29% of $47 million settlement).

The requested 28% fee is also consistent with median fee awards in comparably sized settlements around the country.  For example, research by NERA Economic Consulting has found that in securities class action settlements between $10 million and $25 million in value, the median fee award was 27.5% (from 2014-2023), comparable to the 28% request here.  (Joint Decl. ¶62.)

This authority demonstrates that the requested 28% fee is consistent with the fee percentages awarded in similar class actions.

### C.    The *Johnson* Factors Support the Requested Fee

To determine a reasonable fee award percentage, courts in this District and Circuit also consider the relevant *Johnson* factors:

> (1) The time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Array Biopharma*, 60 F.4th at 1263 & n.1 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979)).   Because "rarely are all of the *Johnson* factors applicable," "a court need not specifically address each *Johnson* factor."  *Crocs*, 2014 WL 4670886 at *2.

Here, each relevant *Johnson* factor supports the fee request.

### 1.    The Amount Involved and Results Obtained

Among the *Johnson* factors, the "greatest weight should be given to the monetary results achieved for the benefits of the class."  *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009); *see also Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *7 (D. Colo. Apr. 22, 2015) ("The degree of success . . . is a critical factor in determining the amount of fees to be awarded.").

Here, the $21 million result achieved for the Settlement Class is exceptional by any measure.  It is the eleventh-largest securities settlement in this District, and nationally, it significantly exceeds the median securities settlement in 2023 ($14 million).  (Joint Decl. ¶77.)

Further, the $21 million recovery represents as much as 63% of estimated damages (in a scenario where Plaintiffs only prevailed on Securities Act claims based on the July 2021 Offering and Defendants proved negative causation, resulting in estimated damages of approximately $33.2 million). (*Id.* ¶39.) Even if Plaintiffs prevailed on all claims, subject to Securities Act negative causation, the recovery represents 9.4% of estimated damages (approximately $224.5 million). (*Id.* ¶40.) Setting aside the practical inability to recover $224.5 million in damages in this scenario, the 9.4% recovery is almost double the 4.8% median recovery in other securities cases. *Id.* ¶¶40-41; *see also In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (Brimmer, J.) (approving settlement that represented "approximately 1.3% of the amount of damages that could be achieved").

Plaintiffs' Counsel achieved this superior result in a highly efficient and skilled manner, working with consulting experts to unpack the complex, technical accounting, mining industry, and regulatory issues and independently develop the allegations of the Amended Complaint. The recovery is particularly noteworthy in light of Gatos's financial condition at the time of settlement, with the Company reporting that it had only $10.5 million in cash and $9 million in outstanding debt (as of May 31, 2023), and that the life of its CLG mine will end in 2028. (Joint Decl. ¶42.) And the $21 million result ensures timely compensation for the Settlement Class without the risk and delay of years of further litigation. The result achieved supports the requested fee.

> **2.    The Novelty and Difficulty of the Questions Presented, and the Skill Required to Represent the Class**

The complexity of this securities action, which includes both Exchange Act and Securities Act claims, demanded exceptional skill from counsel and supports the requested fee.

"Courts have long recognized that securities class actions present inherently complex and novel issues, which are constantly evolving." *Array Biopharma*, 2021 WL 6331178 at *13. And as this Court has recognized, "[l]itigating an action under the PSLRA is not a simple undertaking, especially given the specificity required to plead such claims." *Crocs*, 2014 WL 4670886 at *3.

Here, the inherent complexity of PSLRA securities litigation was magnified by the highly technical nature of the allegations. Investigating and thoroughly analyzing the issues with Gatos's mineral reserve reporting and accounting demanded a high degree of skill: Plaintiffs' Counsel extensively analyzed applicable mining regulations and accounting rules and consulted with mineral reserve and forensic accounting experts. Accordingly, "[t]his factor carries significant weight because the plaintiff class likely would not have obtained any relief without the assistance of counsel with a high level of skill and expertise." *In re Qwest Comms. Int'l, Inc. Sec. Litig.*, No. 01-cv-01451-REB-CBS, 2006 WL 8429707, at *4 (D. Colo. Sept. 29, 2006).

Further, Plaintiffs' Counsel developed the allegations through independent effort—and correctly identified the key alleged error in the 2020 Technical Report even before Defendants publicly acknowledged it. This independent work drove a highly favorable settlement, further supporting the fee request. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("complexity of the litigation and the fact that the plaintiffs did not bring this case as a tag-along suit to a government investigation" justified "the substantial attorneys' fees award").

Other significant challenges arose from falsity and scienter. Defendants' motion to dismiss vigorously contested both elements on a variety of legal and factual grounds, including technical mining regulations and arguments that Gatos's reported mineral reserves merely reflected a reasonable judgment between the competing opinions of experts. (Joint Decl. ¶17.) In response,

Plaintiffs' Counsel filed a detailed 41-page opposition to substantiate the legal and factual grounds of Plaintiffs' claims, positioning the parties to achieve a favorable settlement before a decision on the motion. (*Id.* ¶18.) Nonetheless, the outcome of Defendants' motion was far from assured, and Defendants' arguments and defenses increased the complexity and risk of this action, further supporting the requested fee. *See NU Skin*, 2016 WL 6916486 at *2 (noting the risks presented by "Defendants' defenses concerning the falsity of their statements [and] scienter," among others, weighed in favor of fee award); *Crocs*, 2014 WL 4670886 at *3 (same).

### 3.     Counsel's Experience, Reputation, and Ability

The result achieved reflects Plaintiffs' Counsel's experience and skill: Lead Counsel has extensive experience prosecuting securities class actions, as do Schall and Podolsky as additional counsel for Plaintiffs who performed work under Lead Counsel's direction and supervision. (Joint Decl. ¶¶66, 83-84, 86-87.) WTO also has significant experience in class action litigation. (*Id.* ¶85.)

As set forth in Plaintiffs' Counsel's declarations, Plaintiffs' Counsel marshalled this considerable experience and skill in successfully prosecuting and resolving this Action. (*Id.* ¶¶10-26; Ex. G (Reilly Decl.) ¶5; Ex. H (Schall Decl.) ¶5; Ex. I (Podolsky Decl.) ¶4.) Indeed, Mr. Meyer acknowledged that the arguments presented by Plaintiffs' Counsel were "the product of substantial work, they were complex and reflected a detailed and in-depth understanding of the strengths and weaknesses of the claims and defenses." (Ex. C (Meyer Decl.) ¶9.)

In addition, Plaintiffs' Counsel faced formidable opposing counsel at Davis Polk—among the foremost securities defense firms in the world. This skilled opposition heightened the risk of this litigation and further supports the requested fee. *See Crocs*, 2014 WL 4670886 at *3 (fact that

9

"Defendants' counsel is equally skilled" favored approval of 30% fee award); *Array Biopharma*, 60 F.4th at 1265 (noting district court's finding that "Lead Counsel has extensive and significant experience in the highly specialized field of securities class action litigation, and faced formidable opposition from counsel from Skadden Arps, a firm that also has significant experience with securities litigation practices").

### 4.    The Contingent Nature of the Fee

As this Court has recognized, "[f]ederal securities class actions require plaintiffs' counsel to expend substantial time and effort with no guarantee of success." *Crocs*, 2014 WL 4670886 at *5. The risk that counsel "would recover no compensation for their extensive efforts was not merely hypothetical, especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision." *Id.*

Plaintiffs faced a high burden to plead their claims under the PSLRA, requiring them to allege "with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). Notably, approximately 54% of motions to dismiss are granted in securities class actions.[3] Here, although Plaintiffs' Counsel invested significant effort to develop the detailed allegations of the Amended Complaint, such that Defendants agreed to settle the Action prior to a decision on their motion to dismiss, an adverse ruling on Defendants' motion could have ended the case and foreclosed any recovery. And even if this action had survived Defendants' motion to dismiss, the prospect of any recovery was far from assured; Defendants would vigorously contest liability, dispute damages, and oppose class certification. Even if Plaintiffs had secured a judgment

---

[3] *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation, 2023 Full-Year Review*, NERA, 16 (Jan. 23, 2024).

after trial, Defendants could prevail on appeal, threatening to eliminate any recovery for the Class. Gatos's financial condition—with limited cash and a finite life of mine, as detailed above—added another layer of risk.  (Joint Decl. ¶42.)  With these financial constraints, there was no guarantee that Defendants would be able to pay the full amount of a judgment.

Despite these significant risks of recovering nothing—and receiving no compensation—Plaintiffs' Counsel invested over $1.85 million of work on a fully contingent basis to secure a $21 million recovery for the Settlement Class.  This investment of time and resources, in the face of formidable defense counsel and substantial risks, strongly supports the requested fee.  *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."); *Crocs*, 2014 WL 4670886 at *2 (similar).

### 5. The Time and Labor Expended by Plaintiffs' Counsel

Plaintiffs' Counsel devoted significant time and labor to prosecuting the Action:  2,210.55 hours, amounting to $1,853,045 in attorney and staff time.  (Joint Decl. ¶65.)  Plaintiffs' Counsel has excluded all time concerning fee and expense award matters from these calculations.

This extensive work—described in detail in the Joint Declaration—included investigating and drafting the Amended Complaint, which included complex and highly technical factual allegations regarding the mining industry, mineral reserve reporting regulations, and financial accounting.  (*Id.* ¶¶10-16.)  Next, Plaintiffs' Counsel devoted significant effort to opposing Defendants' motion to dismiss.  (*Id.* ¶¶17-20.)  These efforts positioned the parties to mediate and allowed Plaintiffs' Counsel to secure, after arms-length negotiations, a highly favorable resolution for the Settlement Class.  (*Id.* ¶¶22-26.)  The Joint Declaration further describes the hours and

11

lodestar devoted to each stage of the case.  Plaintiffs' Counsel's investment of over $1.85 million of work on a fully contingent basis supports the requested fee.

While the Court is "not required to perform a lodestar cross-check," *Array Biopharma*, 60 F.4th at 1265, a cross-check also supports the reasonableness of the requested fee.  The requested fee award ($5.88 million before interest) is 3.17 times the $1,853,045 lodestar.[4]  This 3.17 multiplier is reasonable.  Indeed, substantially higher multipliers are awarded in this District and Circuit.  *See, e.g.*, *Qwest*, 2006 WL 8429707 at \*4 (D. Colo. Sept. 29, 2006) (appropriate fee awards may "reach as high as five to ten times the lodestar figure."); *In re Urethane Antitrust Litig.*, No. 04-cv-1616, 2016 WL 4060156, at \*7 (D. Kan. July 29, 2016) (multipliers of 4 or 5 "accepted by a number of courts").  Courts in this District have regularly approved comparable multipliers in awarding fees in securities class action settlements.  *See, e.g.*, *Array Biopharma*, 60 F.4th at 1266 (holding that "district court correctly observed that 'a multiplier of 2.8x' is 'consistent with the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit'"); *Crocs*, 2014 WL 4670886 at \*4 (collecting authority approving multipliers ranging from 2.5 to 4.6); *In re Oppenheimer Champion Income Fund Sec. Fraud Class Actions*, No. 09-cv-386-JLK-KMT, 2011 WL 13217584, at \*2 (D. Colo. Sept. 30, 2011) (4.6 multiplier in case that settled prior to decision on motion to dismiss).

---

[4] Plaintiffs' Counsel have used current rates to account for inflation and the delay in payment.  *See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okl.*, 8 F.3d 722, 726 (10th Cir. 1993) ("The delay in payment of fees may be remedied 'by the application of current rather than historic hourly rates.'") (quoting *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also Duran v. Koehler*, No. 10-cv-01569, 2014 WL 4197578, at \*3 (D. Colo. Aug. 25, 2014) (similar).

The hourly rates of Plaintiffs' Counsel are also appropriate in this complex securities action. The Tenth Circuit has noted that courts should look to rates of "counsel litigating a complex securities class action on a contingent basis." *Array Biopharma*, 60 F.4th at 1266. Here, BFA's rates range from $950 to $1,250 for partners, $895 for Special Counsel, $650 to $795 for associates, and $575 for Senior Project Associates; WTO's rates range from $630 to $1,045 for partners, and $475 for Staff Counsel; Schall's rates range from $800 to $900 for partners; and Podolsky's rate is $750. (Joint Decl. ¶¶67-70.) These rates are comparable to those approved in other securities class actions in this District and Circuit. *Array Biopharma*, 60 F.4th at 1266 ("[T]he district court appropriately found that the rates charged in this case ($455 to $1050) [as of 2021] were generally consistent with those approved in similar cases."); *In re Molycorp Inc. Sec. Litig.*, No. 1:12-cv-00292-RM-KMT, 2017 WL 11598681, at *1-2 (D. Colo. June 16, 2017), ECF No. 253 ¶4, and ECF No. 253-1 (attorney rates up to $955 per hour as of 2017; 30% fee awarded).

### D.    Plaintiffs and the Proposed Class Support the Requested Fee

Further supporting the requested fee, the requested percentage was negotiated and memorialized in Lead Plaintiff Betz's retention agreement with counsel. (Joint Decl. ¶63; Ex. A (Betz Decl.) ¶13.) "[C]ourts should accord a presumption of reasonableness" to such a negotiated fee request between "a properly-selected lead plaintiff and a properly-selected lead counsel." *Qwest*, 2006 WL 8429707 at *2 (quoting *In re Cendant Corp. Litigation*, 264 F.3d 201, 282 (3rd Cir. 2001)); *see also Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-cv-8925 (KMW), 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) ("Courts have found that *ex ante* fee agreements between lead counsel and lead plaintiffs enjoy a presumption of reasonableness under the PSLRA.").

In addition, Plaintiffs support the requested fee, recognizing the skill and effort counsel has expended to achieve an excellent result for the Settlement Class.  (Ex. A (Betz Decl.) ¶11-15; Ex. B (Sweidan Decl.) ¶¶10-12.)  To date, there have been no objections to the requested fee from the Settlement Class.  (Joint Decl. ¶64.)  This fact "is significant and weighs in favor of the requested award."  *Crocs*, 2014 WL 4670886 at *5; *see also McKeon v. Int. Pizza LLC*, No. 18-cv-0932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (same).

## II.    THE EXPENSE APPLICATION IS REASONABLE

"As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."  *Array Biopharma*, 2021 WL 6331178 at *14.  Here, Lead Counsel and WTO seek reimbursement of $226,314 for litigation expenses incurred by Plaintiffs' Counsel in prosecuting the action, including fees related to consulting experts (who assisted in analyzing the accounting and mineral reserve reporting issues); an investigator; counsel for a former Gatos employee; mediation fees; legal research, service and filing fees; and transportation costs to attend the mediation.  The expenses, which are of the type routinely reimbursed in similar actions, are described in detail in Lead Counsel's and WTO's declarations.  (Ex. F (Fonti Decl.) ¶¶13-16; Ex. G (Reilly Decl.) ¶11.)

Notably, the requested expense reimbursement of $226,314 is well below the $325,000 set forth in the Notice, and no Class member has objected to that amount, further supporting the reasonableness of the expenses.  *See Array Biopharma*, 2021 WL 6331178, at *15 ("[s]ignificantly, the requested amount . . . is notably less than the amount stated in the notice").[5]

---

[5] In addition to the expenses that are the subject of this motion, up to $100,000 of Notice and Administration Expenses are payable from the Settlement Fund before the Effective Date (ECF No. 85-1 ¶2.8), while any additional amount will be presented to the Court after the Effective Date.

### III.    PLAINTIFFS' COSTS AND EXPENSES ARE REASONABLE

Finally, pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), Plaintiffs seek "awards of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" in the amounts of $10,000 for Lead Plaintiff Betz and $5,000 for Named Plaintiff Sweidan. The requested awards reflect the time that Plaintiffs devoted to overseeing this Action at reasonable hourly rates.   Specifically, Mr. Betz devoted 64 hours and Mr. Sweidan devoted 20 hours to overseeing the litigation, including reviewing pleadings, motions, and other filings, conferring with Plaintiffs' Counsel, and (for Lead Plaintiff Betz) participating in the mediation.   (Ex. A (Betz Decl.) ¶¶17-18; Ex. B (Sweidan Decl.) ¶¶14-15.)  Plaintiffs' diligent representation of the Settlement Class warrants the requested awards, which are reasonable and comparable to amounts awarded in other actions.  *See, e.g.*, *DaVita*, 2015 WL 3582265 at *5 (finding $10,000 award "reasonable" considering plaintiff's extensive participation in the case).

**CONCLUSION**

Lead Counsel and WTO respectfully request that the Court grant this motion and enter the proposed order submitted herewith, providing for:  (i) an award of attorneys' fees in the amount of 28% of the Settlement Fund, which includes interest at the same rate and for the same period as earned by the Settlement Fund (until paid); (ii) reimbursement of litigation expenses in the amount of $226,314, plus interest at the same rate and for the same period as earned by the Settlement Fund (until paid); and (iii) awards totaling $15,000 to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4).

Dated:  April 26, 2024

s/ Kathryn A. Reilly                                    s/ Joseph A. Fonti
Michael L. O'Donnell                                 Joseph A. Fonti

15

Kathryn A. Reilly
Daniel N. Guisbond
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:    303.244.1879
Email:   odonnell@wtotrial.com
         reilly@wtotrial.com
         guisbond@wtotrial.com

*Liaison Counsel for*
*Lead Plaintiff Bard Betz*

Evan A. Kubota
Bleichmar Fonti & Auld LLP
7 Times Square, 27th Floor
New York, NY 10036
Telephone:   212.789.1340
Facsimile:   212.205.3960
Email: jfonti@bfalaw.com
         ekubota@bfalaw.com

*Counsel for Lead Plaintiff Bard Betz and*
*Lead Counsel for the Class*

Brian Schall
The Schall Law Firm
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone:   424.303.1964
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Bard*
*Betz and Named Plaintiff Jude Sweidan*

16