UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00453-PAB-KAS

MICHAEL BILINSKY, Individually and on Behalf of All Others
Similarly Situated,

        Plaintiff,

v.

GATOS SILVER, INC.,
STEPHEN ORR,
ROGER JOHNSON,
PHILIP PYLE,
JANICE STAIRS,
ALI ERFAN,
IGOR GONZALES,
KARL HANNEMAN,
DAVID PEAT,
CHARLES HANSARD, and
DANIEL MUÑIZ QUINTANILLA,

        Defendants.

---

**JOINT DECLARATION OF JOSEPH A. FONTI AND KATHRYN A. REILLY
IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF THE SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION
AND (II) LEAD COUNSEL AND WTO'S MOTION FOR AWARDS OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND
<u>REASONABLE COSTS AND EXPENSES TO PLAINTIFFS</u>**

---

Case No. 1:22-cv-00453-PAB-KAS    Document 91    filed 04/26/24    USDC Colorado
pg 1 of 35

**TABLE OF CONTENTS**

I.      PLAINTIFFS' PROSECUTION OF THE ACTION ............................................................ 3

        A.      Commencement of the Action and Appointment of Lead Plaintiff ......................... 3

        B.      Plaintiffs' Investigation and Filing of the Amended Class
                Action Complaint ................................................................................................... 4

        C.      Defendants' Motion to Dismiss ............................................................................. 6

        D.      Joint Motion to Stay the Case and Pursue Settlement Negotiations ..................... 12

        E.      Mediation Session with Robert A. Meyer .............................................................. 12

        F.      The Stipulation of Settlement and Plaintiffs' Motion for
                Preliminary Approval ............................................................................................ 13

II.     THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ............................ 14

        A.      The Settlement Is in the Best Interests of the Class Given the Risks Faced
                and the Settlement's Recovery of a Reasonable Range of
                Potential Damages ................................................................................................ 14

        B.      Notice, Claims, and Settlement Fund Administration ........................................... 17

        C.      The Plan of Allocation .......................................................................................... 20

III.    LEAD COUNSEL AND WTO'S APPLICATION FOR ATTORNEYS' FEES,
        LITIGATION EXPENSES, AND REASONABLE COSTS AND EXPENSES
        TO PLAINTIFFS ........................................................................................................... 21

        A.      Fee Application ..................................................................................................... 22

                1.      Plaintiffs, and the Reaction of the Proposed Settlement Class,
                        Support the Fee Request ............................................................................. 22

                2.      The Time and Labor Expended by Plaintiffs' Counsel ............................... 23

                3.      The Novelty and Difficulty of the Questions Presented by the
                        Litigation and Counsel's Skill in Representing the Class ........................... 25

                4.      The Outstanding Result Obtained ............................................................... 26

                5.      The Contingency of the Fee and Preclusion of Other Employment ......... 27

i

6.      Counsel's Experience, Reputation, and Ability ........................................ 28

B.      Expense Application ............................................................................................. 30

1.      Plaintiffs' Counsel's Litigation Expenses.................................................. 30

2.      Plaintiffs' Reasonable Costs and Expenses .............................................. 31

JOSEPH A. FONTI and KATHRYN A. REILLY declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1.      Joseph A. Fonti is a partner at Bleichmar Fonti & Auld LLP ("Lead Counsel" or "BFA"), Court-appointed Class Counsel in the above-captioned action (the "Action").[1] Kathryn A. Reilly is a partner with the law firm of Wheeler Trigg O'Donnell LLP ("WTO"), Liaison Counsel in the Action.

2.      We submit this declaration in support of (I) Plaintiffs' Motion for Final Approval of the Settlement and Approval of the Plan of Allocation and (II) Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Class Representatives.

3.      We have personal knowledge of the matters set forth herein based on our active participation in the prosecution and settlement of the Action.

4.      Attached hereto are true and correct copies of the following documents:

a)  Exhibit A – The Declaration of Lead Plaintiff Bard Betz in Support of: (I) Plaintiffs' Motion for Final Approval of the Settlement and Approval of the Plan of Allocation and (II) Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs (the "Betz Declaration" or "Betz Decl.").

---

[1] Capitalized terms not defined herein have the meanings stated in the Amended Class Action Complaint for Violations of the Securities Laws (ECF No. 54) and the Stipulation and Agreement of Settlement dated September 12, 2023 (ECF No. 85-1).

b)  Exhibit B – The Declaration of Named Plaintiff Jude Sweidan in Support of: (I) Plaintiffs' Motion for Final Approval of the Settlement and Approval of the Plan of Allocation and (II) Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs (the "Sweidan Declaration" or "Sweidan Decl.").

c)  Exhibit C – The Declaration of Robert A. Meyer in Support of the Settlement (the "Meyer Declaration" or "Meyer Decl.").

d)  Exhibit D – The Declaration of Morgan Kimball Regarding (I) Mailing of Notice; (II) Publication of Summary Notice; (III) the Settlement Website and Contact Center Services; (IV) Claim Filing; and (V) Requests for Exclusion and Objections Received to Date (the "Kimball Declaration" or "Kimball Decl.").

e)  Exhibit E – The Declaration of Kyle S. Bingham on Implementation of CAFA Notice (the "Bingham Declaration" or "Bingham Decl.").

f)  Exhibit F – The Declaration of Joseph A. Fonti in Support of Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs, Filed on Behalf of Bleichmar Fonti & Auld LLP (the "Fonti Declaration" or "Fonti Decl.").

g)  Exhibit G – The Declaration of Kathryn A. Reilly in Support of Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs, Filed on Behalf of Wheeler Trigg O'Donnell LLP (the "Reilly Declaration" or "Reilly Decl.").

h) Exhibit H – The Declaration of Brian Schall in Support of Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs, Filed on Behalf of The Schall Law Firm (the "Schall Declaration" or "Schall Decl.").

i) Exhibit I – The Declaration of Susan R. Podolsky in Support of Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs, Filed on Behalf of The Law Offices of Susan R. Podolsky (the "Podolsky Declaration" or "Podolsky Decl.").

## I.    PLAINTIFFS' PROSECUTION OF THE ACTION

### A.    Commencement of the Action and Appointment of Lead Plaintiff

5.    The initial complaint in this action was filed on February 22, 2022, by Plaintiff Michael Bilinsky. (ECF No. 1.)  The initial complaint alleged false and misleading statements in violation of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Gatos Silver, Inc., Stephen Orr (Gatos's former CEO), Roger Johnson (Gatos's former CFO), members of Gatos's Board of Directors, and the underwriters of Gatos's October 28, 2020 Initial Public Offering.

6.    On April 25, 2022, Mr. Bard Betz moved for appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B).  (ECF No. 16.)  Seven other individuals and groups also moved for appointment as lead plaintiff:  Kenneth Pigford (ECF No. 6); Richard Kennay (ECF No. 8); Mark Lloyd

(ECF No. 11); John Teselsky and Hong Nguyen (ECF No. 12); William Algeo (ECF No. 13); John Dockter, Scott Gelb, and Kaan Yazgan (ECF No. 14); and Kathleen Marcus (ECF No. 17).

7.    On June 3, 2022, the Court appointed Mr. Betz as Lead Plaintiff and approved his selection of BFA as Lead Counsel.  (ECF No. 49.)  The Court found that "Mr. Betz satisfies the typicality and adequacy requirements of Rule 23," and acknowledged BFA's experience representing investors "in dozens of securities class actions" and that the firm's partners have "secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades."  (*Id.* at 5-6.)

8.    From inception of the Action through June 3, 2022, Lead Counsel devoted 180.75 hours to the Action, including conducting an initial investigation of the facts of the case and preparing the lead plaintiff motion and related papers, with a total lodestar of $132,575.

9.    After Lead Plaintiff and Lead Counsel's appointment, the parties met and conferred, and submitted an agreed-upon proposed schedule for Lead Plaintiff to file an amended class action complaint and for briefing on Defendants' anticipated motion to dismiss.  (ECF No. 50.)  The Court entered an order approving the schedule on June 14, 2022.  (ECF No. 53.)

**B.    Plaintiffs' Investigation and Filing of the Amended Class Action Complaint**

10.    Immediately after Mr. Betz was appointed Lead Plaintiff and BFA was appointed Lead Counsel, BFA commenced an extensive investigation to prepare the amended class action complaint.

11.    As part of that investigation, BFA analyzed Gatos's U.S. Securities and Exchange Commission ("SEC") filings and Defendants' other public statements, media reports, analyst reports, and historic stock data.  BFA (working with investigators) also conducted an extensive

search to locate former Gatos employees with potentially relevant information, and the amended class action complaint (ECF No. 54) ultimately incorporated information from two former employees: a process manager at Gatos's CLG mine (FE-1), and the CLG mine manager (FE-2). (*Id.* ¶¶300-01.) These former employees provided detailed information that was critical to maximizing the value of the Class's claims. In addition, BFA retained forensic accounting experts at Hemming Morse LLP to assist in the evaluation of Gatos's financial statements.

12. On August 15, 2022, Lead Plaintiff and Named Plaintiff Jude Sweidan (with Lead Plaintiff, "Plaintiffs"), filed the Amended Class Action Complaint for Violations of the Securities Laws (the "Amended Complaint"). (ECF No. 54.) The Amended Complaint alleged violations of Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act against Defendants Orr and Johnson, members of Gatos's Board of Directors (Defendants Stairs, Erfan, Gonzales, Hanneman, Peat, Hansard, and Quintanilla), as well as against Defendant Pyle, Gatos's former Chief Geologist.

13. Based on Plaintiffs' Counsel's investigation, the Amended Complaint significantly expanded and bolstered the allegations of the initial complaint, including by advancing detailed allegations that Gatos's financial statements violated Generally Accepted Accounting Principles ("GAAP") by understating depletion and depreciation expenses and overstating net income.[2]

14. The Amended Complaint also incorporated new, significant allegations concerning falsity and scienter. In particular, the Amended Complaint incorporated information from two former Gatos employees and alleged that Gatos's outside consultant, David Linebarger,

---

[2] "Plaintiffs' Counsel" refers collectively to Lead Counsel, WTO, The Schall Law Firm ("Schall"), and The Law Offices of Susan R. Podolsky ("Podolsky").

determined that there was an error in the 2020 Technical Report due to an incorrect software parameter such that the actual mineral reserves were 20 percent less than the 2020 Technical Report represented, and that Defendants Pyle (whom the Amended Complaint added as a Defendant), Orr, and Johnson were made aware of Linebarger's report detailing those findings. The Amended Complaint also alleged that the 2020 Technical Report's author, Tetra Tech, confirmed the error in the Report when confronted with Linebarger's findings, and that a third expert, Stantec, also agreed that the error existed. In addition, Lead Counsel identified and alleged insider sales of Gatos stock by Defendant Pyle and Mr. Huerta (Vice President of Gatos).

15. On October 3, 2022, after Plaintiffs had filed the Amended Complaint, Gatos publicly stated in a Form 8-K filed with the SEC that the 2020 Technical Report contained "material and compounding errors," including an incorrect software parameter—*i.e.*, the same alleged error identified in the Amended Complaint before Gatos publicly acknowledged it.

16. From June 4, 2022 through and including October 13, 2022, Lead Counsel devoted 1,093.25 hours and $904,489 in total lodestar to investigating and preparing the Amended Complaint.

### C.    Defendants' Motion to Dismiss

17. On October 14, 2022, Defendants moved to dismiss the Amended Complaint, and filed a 41-page memorandum of law in support of their motion. (ECF No. 63.) Defendants argued that Plaintiffs had failed to allege any actionable misstatements or omissions, failed to raise a strong inference of scienter under the Exchange Act, and that Plaintiffs lacked standing to assert claims under the Securities Act—arguments that threatened to end or significantly narrow this litigation. Specifically, Defendants argued that:

a) Defendants' challenged statements regarding the 2020 Technical Report's reserve and resource estimates were non-actionable opinions under the Supreme Court's decision in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015), and the Second Circuit's decision in *Martin v. Quartermain*, 732 F. App'x 37 (2d Cir. 2018), which held that statements estimating future gold production were non-actionable opinions, despite an expert consultant advising the company that its production figures were overstated;

b) The Amended Complaint failed to allege the falsity of Defendants' challenged statements regarding the definitions and methodology associated with the reserve and resource estimates and Gatos's new drilling efforts because nothing in those statements was alleged to be false;

c) The Amended Complaint failed to allege the falsity of Gatos's risk factor disclosure regarding the reserve and resource estimates because Plaintiffs failed to allege that Defendants knew those estimates were inaccurate;

d) The Amended Complaint failed to allege the falsity of statements regarding Gatos's financial performance, GAAP compliance, internal controls, and impairment testing because the Company had not restated its financial results, admitted that its prior estimates did not comply with GAAP, admitted a material weakness in internal controls, or admitted that the Company should have performed impairment testing;

7

e) The Amended Complaint failed to allege an actionable violation of Item 303 because it did not allege that Defendants should have credited Linebarger's report to the same extent as the 2020 Technical Report prepared by Tetra Tech;

f) The Amended Complaint failed to allege Defendants' scienter because the more reasonable inference was that Defendants reasonably relied on the estimates prepared by Tetra Tech in the 2020 Technical Report, and the Amended Complaint failed to allege that Defendants should have relied on Linebarger's report instead;

g) Defendants' statements regarding actual mining production results did not support an inference of scienter because they were true;

h) Defendants' other challenged statements did not support scienter because Defendants had no reason to believe that Gatos's financial statements or its mineral reserve estimates were incorrect;

i) The sales of Gatos stock by Defendant Pyle and Mr. Huerta did not support an inference of scienter because they were not unusual, these individuals maintained significant Gatos holdings after the sales, and other Defendants did not sell any stock;

j) The departures of Defendants Orr, Johnson, and Pyle and of Mr. Kinyon (Gatos's former COO) did not support scienter because the Amended Complaint did not allege that their departures related to the mineral reserve errors; and

8

k) Plaintiffs did not adequately allege standing to pursue the Section 11 claims because they did not purchase directly in Gatos's IPO or the July 2021 Offering, and could not trace their purchases to either offering.

18. On November 23, 2022, Plaintiffs filed a 41-page memorandum of law in opposition to Defendants' motion to dismiss. (ECF No. 67.) Plaintiffs argued that:

a) Defendants' alleged false statements regarding mineral reserves and resources were false statements of present fact because (i) a fact-based estimate is a not a subjective opinion that is protected under *Omnicare*, (ii) Defendants' "estimates" were objectively false when made; and (iii) Gatos admitted that the 2020 Technical Report contained "errors," meaning the "estimates" were false when issued under applicable industry and accounting standards;

b) Even if the reserve and resource estimates were opinions, they still were actionable under *Omnicare* because (i) Defendants did not sincerely believe their statements in light of their receipt of the Linebarger report; (ii) the statements embedded false statements of fact, including claims that Tetra Tech had "verified" the mine plan in calculating the reserves, and that the estimates complied with stringent SEC requirements; and (iii) the statements were actionably misleading in omitting the allegedly known, material errors in the 2020 Technical Report;

c) The Amended Complaint adequately alleged that Defendants violated Item 303 in omitting the known (1) uncertainty of the errors and overstatement in the 2020 Technical Report, and (2) trend that CLG's production rate was

9

unsustainable because the reserves would run out years earlier, and because Defendants allegedly knew the 2020 Technical Report was false based on the verification of three different experts;

d) No formal restatement was required for Plaintiffs to allege the falsity of Gatos's financial statements and statements about GAAP compliance, internal controls, and impairment testing;

e) The Amended Complaint adequately alleged the falsity of the other challenged statements, including definitions and methodology regarding the reserves and resources, Gatos's statements about risks related to reserve and resource estimates, and Defendants' statements touting new drilling activity that would purportedly result in more reserves;

f) Defendant Pyle, Orr, and Johnson's actual knowledge of the error in the 2020 Technical Report demonstrated their scienter and they could not reasonably rely on Tetra Tech, particularly after Tetra Tech allegedly verified the existence of the error;

g) Tetra Tech's ministerial consents to Gatos's re-filing of the 2020 Technical Report in a later SEC filing and its failure to withdraw the report did not replace Defendants' duty to tell the truth;

h) Defendant Pyle's and Mr. Huerta's stock sales supported an inference of scienter because they generated substantial profits, amounted to sales of significant portions of their stock, and were unusual in timing;

10

i)   Defendants were motivated to maintain Gatos's stock price and complete the $118 million July 2021 Offering;

j)   Defendants Orr and Johnson admitted to Gatos's lenders that they had provided them with an overestimation of mineral reserves that was incorrect when provided, supporting their scienter;

k)   Defendants Orr's and Pyle's statements touting their involvement in CLG's mining operations and the accuracy of the reserve and resource estimates supported their scienter;

l)   Gatos's "core operation" was to operate the CLG mine and extract its reserves and resources, supporting Defendants' knowledge of the alleged material errors;

m)  Defendants' alleged GAAP violations and Defendants Orr's and Johnson's Sarbanes-Oxley certifications further supported scienter;

n)   The magnitude and duration of alleged fraud, with an alleged overstatement of the amount of minerals by more than $1.6 billion, supported scienter;

o)   The termination of Mr. Kinyon and Defendants Orr, Johnson, and Pyle supported scienter;

p)   Plaintiffs had standing to pursue the Section 11 claims because (i) they purchased shares that were traceable to the IPO and July 2021 Offering, (ii) Defendants failed to demonstrate that unregistered shares entered the market prior to Plaintiffs' purchases, and (iii) any insider sales had no impact on Plaintiffs' standing because they were made pursuant to a registration

11

statement that incorporated the same alleged misstatements as those made in the IPO and July 2021 Offering.

19.    On December 23, 2022, Defendants filed a 35-page reply memorandum of law in further support of their motion to dismiss the Amended Complaint.  (ECF No. 70.)

20.    From October 14, 2022 through and including February 28, 2023, Lead Counsel devoted 479.35 hours with a total lodestar of $421,218 to researching and drafting Plaintiffs' opposition to Defendants' motion to dismiss, analyzing Defendants' reply memorandum of law, and continuing to investigate the case pending oral argument or a decision on Defendants' motion to dismiss.

**D.    Joint Motion to Stay the Case and Pursue Settlement Negotiations**

21.    After completion of the motion to dismiss briefing, the parties agreed to engage in private mediation before Robert A. Meyer of JAMS.  To facilitate that mediation, on April 13, 2023, the parties filed a joint motion to stay a ruling on Defendants' motion to dismiss the Amended Complaint, and advised the Court that they would provide a joint status update on or before June 15, 2023.  (ECF No. 78.)  The Court granted the motion and stayed the case on April 26, 2023.  (ECF No. 79.)

**E.    Mediation Session with Robert A. Meyer**

22.    On June 13, 2023, the parties, their counsel, and representatives of Defendants' insurers participated in a full-day mediation with Mr. Meyer.

23.    In advance of the mediation, the parties exchanged detailed mediation statements addressing liability, damages, and the strength of Defendants' pending motion to dismiss, among other issues.

24.     On June 13, 2023, the parties exchanged multiple demands and counteroffers under Mr. Meyer's auspices.  After vigorous negotiations and discussion, at the conclusion of the session, Mr. Meyer made a formal mediator's proposal that the case settle for $21 million, and the parties accepted the mediator's proposal.

25.     From March 1, 2023 through and including June 13, 2023, Lead Counsel devoted 123.1 hours with a total lodestar of $132,909 to preparing for and attending the mediation session.

26.     On June 15, 2023, the parties advised the Court that they had reached an agreement in principle to settle the Action and requested that the Court grant a temporary stay of proceedings pending submission of proposed settlement papers.  (ECF No. 80.)  On June 16, 2023, the Court entered an order continuing the prior stay of proceedings.

**F.      The Stipulation of Settlement and Plaintiffs' Motion for Preliminary Approval**

27.     After reaching an agreement in principle, the parties engaged in several weeks of negotiations to prepare the Stipulation and its exhibits, including the Notice, Long-Form Notice, Proof of Claim, and Summary Notice, and developed the Plan of Allocation with expert assistance.

28.     The Settlement documents and unopposed preliminary approval motion were filed on July 13, 2023.  (*See* ECF No. 82.)

29.     Defendants' Counsel have advised that, on July 19, 2023, Defendants served the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), *et seq*.  (*See* Ex. E (Bingham Decl.).)

30.     Following the filing of the preliminary approval motion, counsel for Kathleen Marcus contacted the parties and raised a concern as to the scope of the Stipulation's Release with respect to claims for breach of fiduciary duty, unjust enrichment, or waste brought

13

by or on behalf of Gatos against the Individual Defendants or others, in connection with a litigation demand sent by Ms. Marcus to Gatos on April 27, 2023. In response to these concerns, the parties and Ms. Marcus agreed to revise the Release with clarifying language. The parties filed a joint notice informing the Court of the amendments to the Settlement documents on September 12, 2023. (*See* ECF No. 85.)

31. On February 29, 2024, the Court entered the Preliminary Approval Order. (ECF No. 87.)

32. From June 14, 2023 through April 19, 2024, Lead Counsel devoted 105.5 hours with a total lodestar of $96,218 to Settlement-related efforts, including preparing the Motion for Preliminary Approval and accompanying papers, overseeing the Notice Plan, and preparing the motion for final approval of the proposed Settlement. All time concerning fee and expense award matters is excluded from these calculations.

## II.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

### A.    The Settlement Is in the Best Interests of the Class Given the Risks Faced and the Settlement's Recovery of a Reasonable Range of Potential Damages

33. The proposed Settlement provides the Settlement Class with an immediate and certain cash benefit of $21 million, which represents a meaningful percentage of reasonably recoverable damages, and is a highly favorable result given the risks of further litigation.

34. Plaintiffs and Plaintiffs' Counsel endorse the proposed Settlement. (*See* Ex. A (Betz Decl.) ¶¶7-10; Ex. B (Sweidan Decl.) ¶¶7-9.) Plaintiffs, who have overseen the prosecution of the action, understand and have executed their fiduciary duty to act in the best interest of the Settlement Class. Lead Counsel BFA specializes in complex securities class action litigation and is highly experienced in such litigation, and WTO has significant experience in class action

litigation.   (*See* Ex F (Fonti Decl.) at Ex. 1 (BFA Resume); Ex. G (Reilly Decl.) at Ex. 1 (WTO Resume).)   Based on their experience and knowledge of the facts and applicable law, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement is in the best interest of the Settlement Class.

35.   Although Plaintiffs and Plaintiffs' Counsel believe that the claims asserted are meritorious, continued litigation nonetheless posed significant risks to securing any recovery (much less a larger recovery than the proposed Settlement).

36.   For example, Defendants' motion to dismiss threatened to end the Action by raising threshold issues of whether Plaintiffs adequately alleged any actionable misstatement or omission, scienter, and Securities Act standing.  Had Defendants' falsity arguments prevailed, any potential recovery would have been eliminated altogether, while Defendants' arguments on scienter and standing threatened to significantly reduce any recovery.

37.   Even assuming the Amended Complaint had survived Defendants' motion to dismiss, Defendants would maintain significant defenses, including arguments on falsity, materiality, scienter, and Securities Act standing, as well as loss causation and damages, which would have arisen at subsequent stages of the litigation, including summary judgment, trial, and on appeal.

38.   Even if Plaintiffs had prevailed on liability at trial and on appeal, proving damages (and their amount) raised additional risks and would depend heavily on numerous variables, including whether Plaintiffs proved their Exchange Act and Securities Act claims, whether purchases prior to the July 2021 Offering were traceable to the IPO for purposes of the Securities Act, and the impact of Defendants' negative causation defense under the Securities Act.

15

39.     These factors and risks resulted in a range of estimated damages.  At the low end, for example, with expert assistance, Lead Counsel estimates that if Plaintiffs only prevailed on Securities Act claims based on the July 2021 Offering and Defendants proved negative causation, estimated damages would be approximately $33.2 million.  In that scenario, the proposed Settlement would amount to a 63% recovery—over half of estimated damages.

40.     At the high end, estimated damages would be approximately $224.5 million if Plaintiffs prevailed on all claims but Defendants prevailed on negative causation under the Securities Act.  The $224.5 million figure is far in excess of Defendants' realistic ability to pay; indeed, near the time of Settlement (as of May 31, 2023) the Company reported that it had only $10.5 million in cash and $9 million in outstanding debt.  Setting aside the practical inability to recover $224.5 million in damages, in this scenario, the proposed Settlement would amount to a 9.4% recovery.

41.     Thus, the Settlement recovers between 9.4% and 63% of potential estimated damages.  Setting aside the risks of achieving any recovery at all, even the low end of this range of potential recovery significantly exceeds the median recovery in other securities cases.  For example, according to industry research, the median recovery in cases alleging violations of the Exchange Act (whether alone or in addition to other claims) was 4.8% between 2014 and 2022. *See* Cornerstone Research, Securities Class Action Settlements, 2023 Review and Analysis at 6, *available at* https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf.  Here, even the low end of the percentage recovery (9.4%) is almost twice the median.

42.     The $21 million Settlement is a particularly favorable result in light of Gatos's financial condition at the time of the Settlement. For example, Gatos reported that it had a cash balance of $10.5 million and $9 million in outstanding debt as of May 31, 2023 (and although Gatos holds a 70% interest in a joint venture with additional cash, it cannot access those funds absent authorized distributions). Meanwhile, Gatos's primary asset—the CLG mine at issue in this Action—is being depleted, with Gatos reporting near the time the parties agreed to the proposed Settlement that the life of Gatos's only production mine, CLG, will end in 2028. Gatos cautioned in its 2023 Form 10-K that there is "no assurance" that Gatos will identify "any additional proven or probable mineral reserves," and that the "failure to establish additional proven or probable mineral reserves would severely restrict our ability to implement our strategies for long-term growth, which include extending the current CLG life of mine."

43.     Importantly, the proposed Settlement guarantees the Settlement Class a prompt, favorable cash recovery and eliminates the substantial risks and delay of further litigation. Thus, Plaintiffs and Plaintiffs' Counsel firmly believe that the Settlement is in the best interest of the Settlement Class.

### B.     Notice, Claims, and Settlement Fund Administration

44.     At Lead Counsel's direction, immediately after the Preliminary Approval Order, the Court-appointed notice and claims administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), began implementing the Court-approved notice program. Lead Counsel has received, and continues to receive, regular updates from Epiq on the status of the notice and claims process.

45.     On     March     8,     2024,     Epiq     activated     the     Settlement     Website (www.GatosSecuritiesLitigation.com), which provides investors with access to the Notice,

17

Summary Notice, Long-Form Notice, the Proof of Claim form, important case documents, as well as FAQs and instructions on how to submit claims, opt-out from the Settlement, or submit an objection.  (Ex. D (Kimball Decl.) ¶¶14-19.)

46.    On March 11, 2024, the Court-approved Summary Notice was published in *Investor's Business Weekly* and transmitted over *PR Newswire*.  (*Id.* ¶12.)  That same day, Epiq caused the Summary Notice to be published by the Depository Trust Corporation ("DTC") on the DTC Legal Notice System ("LENS"), which enables participating banks and brokers to review the Summary Notice and directly contact Epiq to obtain copies of the Notice for clients who may be Settlement Class Members.  (*Id.* ¶13.)

47.    In addition, commencing on March 11, 2024 and continuing through April 9, 2024, Epiq caused banner advertisements regarding the proposed Settlement to appear on millions of webpages containing *Yahoo! Finance* and *Google Display Network* digital properties.  (*Id.* ¶12.)

48.    On March 21, 2024, Epiq began delivering notices directly to the Gatos investors identified in the transfer list provided by Gatos to Epiq and to each entity included on a proprietary list of approximately 1,400 nominees, as provided in the notice plan set forth in Plaintiffs' memorandum of law in support of their motion for preliminary approval (ECF No. 82-1 at 21), and the declaration of Morgan Kimball attached thereto (ECF No. 82-9), and in accordance with the Court's instructions in the Preliminary Approval Order (ECF No. 87).  (Ex. D (Kimball Decl.) ¶¶3-5.)

49.    At Lead Counsel's direction, Epiq also took additional steps with respect to nominees and brokers.  Namely, Epiq followed up with certain nominees and brokers to ensure that they had received copies of the Notice, that they were following the Notice's specific

instructions, and that they were communicating copies of the Notice to investors via email where possible. (*Id.* ¶7.)

50.    To date, Epiq has sent 10,266 Notices. This includes 9,204 Notices either sent directly to investors identified by nominees or provided to nominees at their request so they can provide them directly to investors. To date, Epiq has received 3,649 names and addresses of potential Settlement Class Members from Nominees, and has received requests for, and provided, 5,555 copies of the Notice to nominees for them to forward to their customers. In addition, one nominee, Broadridge, has informed Epiq that it emailed 18,889 copies of the Notice to beneficial owners. The total of 29,155 Notices that have been sent to investors is 97% of Epiq's estimate when it first prepared the Notice plan. (*Id.* ¶¶5, 8-11.)

51.    Pursuant to the Preliminary Approval Order, the deadline for Settlement Class Members to opt out of the Settlement is May 5, 2024, and the deadline for Settlement Class Members to object to the proposed Settlement is May 10, 2024. (*See* ECF No. 87 at 22-23.) To date, Epiq has not received any requests for exclusion or any objections. (Ex. D (Kimball Decl.) ¶¶27, 29.) Lead Counsel will file reply papers by May 24, 2024 to respond to any objections.

52.    By March 30, 2024, per the terms of the Stipulation, The Huntington National Bank, as Escrow Agent, received the $21 million Settlement Amount from Defendants and their insurance carriers. Per the terms of the Stipulation, the full amount has been invested in United States Agency or Treasury securities or other instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or any agency thereof.

**C.      The Plan of Allocation**

53.      The Plan of Allocation, contained in the Long-Form Notice, is designed to achieve the fair, equitable, and reasonable distribution of the Net Settlement Fund to Authorized Claimants based on estimates of their recognized losses in transactions in Gatos Securities during the Class Period.

54.      Specifically, the Plan of Allocation (developed by Lead Counsel with expert assistance) calculates a "Recognized Loss Amount" for each purchase or acquisition of Gatos Securities (Gatos common stock, call options of Gatos, and put options of Gatos) during the Class Period listed on the Proof of Claim form for which the claimant provides adequate documentation.

55.      Transactions in Gatos Securities may result in Exchange Act Recognized Loss Amounts, with the calculation depending on when the claimant purchased and/or sold the Gatos Securities and whether the claimant held the Gatos Securities through the 90-day look-back period after the end of the Class Period. *See* 15 U.S.C. § 78u-4(e).

56.      Transactions in Gatos common stock traceable to the IPO or July 2021 Offering may result in Securities Act Recognized Loss Amounts. To avoid double-counting, the Plan of Allocation provides that a claimant's Recognized Loss Amount for each purchase or acquisition of Gatos common stock during the Class Period shall be the greater of (a) the Securities Act Recognized Loss Amount (if any) or (b) the Exchange Act Recognized Loss Amount (if any). The calculation of Securities Act Recognized Loss Amounts generally reflects the Securities Act's statutory damages formula and depends on the amount paid for each share of Gatos Common Stock (not to exceed the IPO or July 2021 Offering price, as applicable) and the price or value of the stock at the time of suit or the time of sale. *See* 15 U.S.C. § 78k(e).

20

57.    A claimant's "Recognized Claim" is the sum of the claimant's Recognized Loss Amounts.  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on their Recognized Claims in proportion to all Recognized Claims, as determined by Epiq.

58.    In sum, the proposed Plan of Allocation, developed by Lead Counsel with expert assistance, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants based on estimates of recognized losses calculated using the amounts, prices, and dates of their transactions, and appropriately recognizes the different methods to calculate damages under the Securities Act and the Exchange Act.  Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved.

III.    **LEAD COUNSEL AND WTO'S APPLICATION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND REASONABLE COSTS AND EXPENSES TO PLAINTIFFS**

59.    Lead Counsel and WTO seek an award of attorneys' fees of 28% of the Settlement Fund, which includes interest at the same rate and for the same period as earned by the Settlement Fund (until paid).  The requested fee award (equivalent to $5,880,000 before interest) is the same amount that was conveyed to Settlement Class Members in the Notice (the "Fee Application").  Lead Counsel and WTO also request payment from the Settlement Fund for litigation expenses incurred in connection with the prosecution of the action in the amount of $226,314, and awards totaling $15,000 to Plaintiffs in recognition of their reasonable costs and expenses directly related to their representation of the Settlement Class (the "Expense Application").

21

A.    **Fee Application**

60.    For Plaintiffs' Counsel's efforts in achieving the $21 million Settlement on behalf of the Settlement Class, Lead Counsel and WTO seek an award of attorneys' fees of 28% of the Settlement Fund.

61.    With Plaintiffs' and the Settlement Class's support, Lead Counsel and WTO respectfully submit that the requested fee award is fair and reasonable and should be approved based on the time and labor expended by Plaintiffs' Counsel, the skill with which Plaintiffs' Counsel litigated the complex and difficult issues presented, the outstanding result achieved for the benefit of the Class, the risk and contingent nature of the representation, and counsel's experience and ability.

62.    Indeed, as discussed in Lead Counsel and WTO's memorandum, the requested 28% fee is below the 33% typically awarded in similarly complex cases in this Circuit.  Nationally, research by NERA Economic Consulting has found that in securities class action settlements between $10 million and $25 million in value, the median fee award was 27.5% (from 2014-2023), comparable to the 28% request here.[3]

1.    **Plaintiffs, and the Reaction of the Proposed Settlement Class, Support the Fee Request**

63.    Plaintiffs support the fee request.  (*See* Ex. A (Betz Decl.) ¶¶11-15; Ex. B (Sweidan Decl.) ¶¶10-12.)  The fee request is consistent with Lead Plaintiff Betz's retention agreement with counsel entered at the outset of Mr. Betz's involvement in this Action.  (*See* Ex. A (Betz Decl.)

---

[3] *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation, 2023 Full-Year Review*, NERA, 29 (Jan. 23, 2024).

¶13.)  Plaintiffs' support and *ex ante* agreement regarding the fee request weighs heavily in favor of approval of the requested fee.

64.     The reaction of the Settlement Class to the proposed Settlement, including the fee request, further supports approval.  The Notice advised Settlement Class Members that counsel would apply to the Court for an award of attorneys' fees not to exceed 28% of the Settlement Fund, and over 29,000 Notices were transmitted.  (Ex. D (Kimball Decl.) ¶11.)  While the deadline for filing objections is May 10, 2024, to date, no Settlement Class Member has filed an objection to the proposed Settlement or the requested fee award.  (*Id.* ¶29.)  The absence of objections supports the requested fee.  *See In re Crocs Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014) ("the fact that none of the class members objected to the requested attorneys' fees is significant and weighs in favor of the requested award"); *McKeon v. Integrity Pizza LLC*, No. 18-cv-0932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (same).

### 2.     The Time and Labor Expended by Plaintiffs' Counsel

65.     Plaintiffs' Counsel have devoted significant time and effort to the prosecution of this Action over the last two years:  2,210.55 hours with a total lodestar of $1,853,045.  (*See* Ex. F (Fonti Decl.) ¶8; Ex. G (Reilly Decl.) ¶9; Ex. H (Schall Decl.) ¶9; Ex. I (Podolsky Decl.) ¶8.)  This time includes, among other things, investigating, drafting, and filing the Amended Complaint, which detailed complex and highly technical factual allegations; opposing Defendants' motion to dismiss; and successfully leveraging this work in mediation to secure, through arms-length negotiations under Mr. Meyer's auspices, a highly favorable resolution for the Settlement Class.

Plaintiffs' Counsel has excluded all time concerning fee and expense award matters from these calculations.

66.    Attached hereto as Exhibits F, G, H, and I are declarations from Joseph A. Fonti, Kathryn A. Reilly, Brian Schall, and Susan R. Podolsky in support of the request for an award of attorneys' fees and litigation expenses.  These declarations respectively identify the BFA, WTO, Schall, and Podolsky attorneys and support staff who have worked on this case; each individual's qualifications, experience, and role in the litigation; schedules summarizing the amount of time spent by the attorneys and professional support staff from inception through April 19, 2024, the rates applicable to each individual, and a lodestar calculation for each individual.  The Reilly, Schall, and Podolsky Declarations further describe the work performed by WTO as Liaison Counsel, and the work performed by Schall and Podolsky as additional counsel for Plaintiffs, each under Lead Counsel's direction and supervision.  (Ex. G (Reilly Decl.) ¶5; Ex. H (Schall Decl.) ¶5; Ex. I (Podolsky Decl.) ¶4.)

67.    BFA's hourly billing rates for the attorneys involved in this matter (using current rates for current attorneys, and the rate in the final year of employment for attorneys no longer employed by BFA) range from $950 to $1,250 for partners, $895 for Special Counsel, $650 to $795 for associates, and $575 for Senior Project Associates.[4]  (Ex. F (Fonti Decl.) ¶¶8-9.)

---

[4] Plaintiffs' Counsel have used current rates to account for inflation and the delay in payment.  *See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okl.*, 8 F.3d 722, 726 (10th Cir. 1993) ("The delay in payment of fees may be remedied 'by the application of current rather than historic hourly rates.'") (quoting *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *Duran v. Koehler*, No. 10-cv-01569, 2014 WL 4197578, at *3 (D. Colo. Aug. 25, 2014) (similar).  For context, applying Lead Counsel's rates at the time the parties agreed to the proposed Settlement (in 2023), Lead Counsel's lodestar (which is 91% of Plaintiffs' Counsel's total) would be $1,556,224, compared to $1,687,409 at current rates.

68.     WTO's current billing rates for attorneys involved in this matter range from $630 to $1,045 for partners, and $475 for Staff Counsel.  (Ex. G (Reilly Decl.) ¶¶8-9.)

69.     The current billing rates for Schall attorneys involved in this matter range from $800 to $900 for partners.  (Ex. H (Schall Decl.) ¶¶8-9.)

70.     Ms. Podolsky's current billing rate as Principal of Podolsky is $750.  (Ex. I (Podolsky Decl.) ¶¶7-8.)

71.     We believe these rates compare favorably to (and are significantly lower than) the rates charged by Defendants' counsel in this Action, which are paid on an hourly basis without regard to risk or result.  In fact, based on information recently filed publicly in United States Bankruptcy Courts, the hourly rates of Defendants' counsel significantly exceed those of Plaintiffs' Counsel.  *See, e.g.*, *In re Instant Brands Acquisition Holdings Inc.*, No. 23-90716 (Bankr. S.D. Tex. Feb. 15, 2024), ECF No. 1093 (Davis Polk & Wardwell LLP's monthly fee statement for December 2023 showing hourly rates for partners ranged from $1,975 to $2,155; hourly rates for counsel of $1,615; and hourly rates for associates ranged from $645 to $1,465).

### 3.     The Novelty and Difficulty of the Questions Presented by the Litigation and Counsel's Skill in Representing the Class

72.     The difficulties presented by this complex securities class action, and the skill required to successfully navigate them, favor approval of the requested fee award.

73.     The Amended Complaint reflects Plaintiffs' Counsel's extensive work to develop highly technical allegations regarding the alleged overstatements of reserves and resources, and detailed accounting allegations that quantify the alleged financial impact of those overstatements. Lead Counsel deployed its experience and skill in securities litigation to develop these complex allegations.

74.     In their motion to dismiss the Amended Complaint, Defendants' primary argument was that the allegations showed, at most, competing expert opinions from Tetra Tech and Linebarger concerning the accuracy of reserves, coupled with arguments that Linebarger's views were entitled to little or no weight because he was not Gatos's official "qualified person" under relevant mining reporting regulations.

75.     These arguments raised significant challenges with respect to the falsity of Defendants' statements and their scienter.  Specifically, invoking *Omnicare*, Defendants argued that Defendants' statements were inactionable opinions, leveraging the Second Circuit's decision in *Quartermain*, which affirmed that certain statements regarding mining reserve estimates were not actionable notwithstanding an expert consultant's views.  Plaintiffs' Counsel skillfully responded to these arguments, but nonetheless faced substantial risk that they could defeat or substantially narrow the Class's claims.

76.     Finally, Plaintiffs' Counsel leveraged the allegations of the Amended Complaint and the strength of Plaintiffs' opposition to the motion to dismiss in connection with the mediation under the auspices of Mr. Meyer.  These efforts resulted in securing a $21 million recovery for the Settlement Class before a decision on the motion to dismiss.

### 4.     The Outstanding Result Obtained

77.     The $21 million proposed Settlement achieved in this Action is an outstanding result by any measure.  It is the eleventh-largest securities settlement in this District, and nationally, it significantly exceeds the median securities settlement in 2023 ($14 million).[5]  As described

---

[5] *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation, 2023 Full-Year Review*, NERA, 20 (Jan. 23, 2024).

26

above, the proposed Settlement represents a recovery of 9.4% to 63% of estimated damages—far more than the typical recoveries achieved in a securities class action. (*See* ¶¶39-41, *supra*.) Specifically, the recovery represents as much as 63% of estimated damages (in a scenario where Plaintiffs only prevailed on Securities Act claims based on the July 2021 Offering and Defendants proved negative causation). Even under a scenario where Plaintiffs prevailed on both the Exchange Act and Securities Act claims, subject to negative causation on the latter, the recovery represents 9.4% of estimated damages. This percentage is almost double the median 4.8% recovery in other securities cases—an exceptional result even before considering the practical inability to recover $224.5 million in damages in light of Gatos's serious financial constraints.

78.    Notably, Plaintiffs' Counsel has achieved this outstanding recovery promptly, without Settlement Class Members being subject to years of uncertainty that would accompany further litigation through discovery, summary judgment, trial, and appeals.

### 5.    The Contingency of the Fee and Preclusion of Other Employment

79.    The requested fee award is also reasonable in light of the significant risks assumed by Plaintiffs' Counsel in prosecuting this complex class action on a fully contingent basis. Plaintiffs' Counsel undertook the representation of the Class knowing that the litigation could last for years, provided no guarantee of any compensation, and would require the substantial investment of time that would otherwise have been devoted to other cases. Plaintiffs' Counsel also assumed the risk of advancing all costs and expenses necessary to successfully prosecute the Action with no guarantee of any reimbursement.

80.    Plaintiffs' Counsel assumed the risk of a fully contingent representation in the face of Defendants' vigorous opposition. Defendants' team of highly experienced and skilled counsel

27

at Davis Polk sought to terminate this Action at the pleading stage on the basis that none of the alleged misstatements was actionable, including because the allegedly false resource and reserve estimates were forecasts and/or opinions. In addition, the Class's Section 10(b) claims require proof of scienter, which presented additional risks. Even if Plaintiffs defeated Defendants' motion to dismiss and summary judgment motions, then proceeded to trial, Plaintiffs faced a real risk that the jury would accept Defendants' arguments that their statements were merely subjective opinions—potentially eliminating any recovery—or credit Defendants' arguments that they reasonably relied on Tetra Tech's expert opinion, potentially foreclosing scienter and any recovery on the Exchange Act claims.

81.    Plaintiffs' Counsel recognized these risks but nevertheless assumed responsibility for litigating the Action with no guarantee of any compensation. To date, Plaintiffs' Counsel has invested more than 2,200 hours of time into this action and incurred over $226,000 in expenses, while receiving no compensation or reimbursement of any kind. Plaintiffs' Counsel's assumption of such significant risk, coupled with the quality of the results achieved, support the requested fee.

### 6. Counsel's Experience, Reputation, and Ability

82.    BFA's, WTO's, Schall's, and Podolsky's firm resumes are attached to the Fonti Declaration (Ex. F), the Reilly Declaration (Ex. G), the Schall Declaration (Ex. H), and the Podolsky Declaration (Ex. I), respectively, which include further biographical information about each firm's attorneys and staff involved in this case, as well as background information about each firm and its experience.

83.    Since its founding in 2014, BFA has recovered nearly $2 billion for investors. Securities class actions that BFA has prosecuted and successfully resolved include a $420 million

recovery in *In re Teva Securities Litigation*, No. 17-cv-0558 (D. Conn.); a $234 million recovery in *In re MF Global Holdings Securities Litigation*, 11-cv-07866-VM (S.D.N.Y.); a $219 million recovery in *In re Genworth Financial Inc. Securities Litigation*, 14-cv-00682-JAG (E.D. Va.); a $129 million recovery in *Greene v. Granite Construction Inc.*, No. 19-cv-04744 (N.D. Cal.); and a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv- 02121-LAK (S.D.N.Y.).

84.     BFA also serves as lead counsel in a number of high-profile pending securities class action lawsuits throughout the country, including *Ciarciello v. Bioventus Inc.*, No. 23-cv-00032 (M.D.N.C.); *Lozada v. TaskUs, Inc.*, No. 22-cv-01479 (S.D.N.Y.); *In re Talis Biomedical Securities Litigation*, No. 22-cv-00105 (N.D. Cal.); *Peters v. Twist Bioscience Corp.*, No. 22-cv-08168 (N.D. Cal.); and *Chow v. Enochian Biosciences Inc.*, No. 22-cv-01374 (C.D. Cal.).

85.     As demonstrated in its firm resume, WTO has significant experience in class action litigation, having handled hundreds of class actions in state and federal courts in at least 33 states. (Ex. G (Reilly Decl.) ¶3, Ex. 1.)  WTO leveraged its valuable experience litigating in this District in this Action.

86.     Schall also has ample experience in securities litigation.  Schall has helped recover nearly half a billion dollars for investors since 2017 and is singularly committed to recovering shareholder money from publicly traded companies that commit fraud.  (Ex. H (Schall Decl.) ¶3, Ex. 1.)

87.     Podolsky has over a decade of experience prosecuting securities class actions and has assisted in recovering $898 million for investors.  (Ex. I (Podolsky Decl.) ¶3.)

B.      **Expense Application**

1.      **Plaintiffs' Counsel's Litigation Expenses**

88.      Lead Counsel and WTO respectfully request $226,314 in litigation expenses that Plaintiffs' Counsel has incurred in the prosecution of the case.  Plaintiffs' Counsel incurred these expenses with full knowledge that they might not recover any of them if the litigation was unsuccessful.

89.      Given the fully contingent representation and the risks of litigation, Plaintiffs' Counsel was incentivized to prosecute this Action as efficiently as possible without undermining its aggressive litigation strategy.  Notably, the requested amount of expenses is nearly $100,000 lower than the maximum amount of $325,000 estimated in the Notice disseminated to the Class. To date, no Settlement Class Member has objected to the maximum amount of expenses set forth in the Notice, confirming the reasonableness of the requested expenses.

90.      The litigation expenses incurred by Plaintiffs' Counsel in prosecuting this Action are summarized by category and vendor below in Table 1, and are further described in the Fonti Declaration (Ex. F ¶¶13-16) and the Reilly Declaration (Ex. G ¶11).

**TABLE 1**

| CATEGORY | CATEGORY TOTAL |
|---|---|
| Computer Research | $2,103 |
| Expert Fees | $87,078 |
| Litigation Support Vendor Fees | $30,926 |
| Outside Counsel | $91,899 |
| Mediation Fees | $9,475 |
| Postage and Overnight Mail | $24 |
| Service and Filing Fees | $1,127 |
| Accommodations | $1,076 |
| Meals | $150 |

30

| CATEGORY | CATEGORY TOTAL |
|---|---|
| Local Transportation | $155 |
| Out-of-Town Transportation | $1,889 |
| Miscellaneous | $412 |
| **TOTAL** | **$226,314** |

91.      As noted in Plaintiffs' declarations, Plaintiffs believe that the litigation expenses for which counsel is seeking reimbursement are reasonable and represent costs and expenses necessary for the prosecution of the case.  (Ex. F (Fonti Decl.) ¶15; Ex. G (Reilly Decl.) ¶11.)

## 2.      Plaintiffs' Reasonable Costs and Expenses

92.      Plaintiffs Bard Betz and Jude Sweidan also seek awards, pursuant to 15 U.S.C. § 78u-4(a)(4), of their costs and expenses directly related to their representation of the Class.  As detailed in the Betz and Sweidan Declarations (Exhibits A and B, respectively), based on Plaintiffs' time devoted to this Action, Lead Plaintiff Betz seeks an award of $10,000 and Named Plaintiff Sweidan seeks an award of $5,000.  Together, these amounts are equal to the $15,000 that the Notice advised the Settlement Class could be requested.

93.      We respectfully submit that these awards are consistent with Congress's intent, as expressed in the PSLRA, of encouraging investors to take active roles in supervising securities actions.  As set forth in their declarations, Mr. Betz and Mr. Sweidan have been committed to pursuing this Action and diligently and effectively fulfilled their obligations as representative plaintiffs.  We respectfully submit that their efforts and contributions merit the requested awards.

31

Dated: April 26, 2024

*s/ Joseph A. Fonti*
Joseph A. Fonti

*s/ Kathryn A. Reilly*
Kathryn A. Reilly
