# EXHIBIT B

**Email from Joseph A. Fonti to William Natbony,
dated May 21, 2024 at 4:51 p.m. ET**

**From:**              Joseph Fonti
**Sent:**              Tuesday, May 21, 2024 4:51 PM
**To:**                Bill Natbony
**Cc:**                Evan Kubota
**Subject:**           Gatos Securities Litigation

Mr. Natbony:

Thank you for speaking with us today.  As we discussed, we understand that you wish you to appear remotely at the Fairness Hearing on May 31.  We discussed the following points:

1.  The Fairness Hearing is in person in Denver.  However, we will advise the Court on Friday of your interest in appearing in the event that the Court wishes to permit telephonic participation.  We will also provide this correspondence to the Court and send you a copy of our submission.

2.  During our call, you confirmed that you have not objected to the Settlement.  As we explained, the deadline for objections was May 10.  (Objections must also be stated in writing and meet several other requirements stated in the Court-approved notice, including providing documentation of membership in the Settlement Class.  See https://www.gatossecuritieslitigation.com/Content/Documents/Notice.pdf.)

3.  We discussed your questions about the $21 million Settlement amount.  We believe the Settlement represents an excellent result under any measure.  As our Court filings explain, $21 million represents 9.4% to 63% of estimated damages, which are a range of approximately $33.2 million to $224.5 million.  The wide range of damages is due to the complex facts of the case, and the possibility of Gatos prevailing on some or many pieces of the factual and legal elements.  Of course, Gatos could have prevailed entirely, resulting in $0 recovery.

    a.  The range of recoveries meets or exceeds typical percentages in securities class litigation.  For example, the 9.4% figure is nearly double the 4.8% median recovery in Exchange Act class actions around the country.

    b.  The $21 million Settlement should also be evaluated in the context of the risk and delay of further litigation, and Gatos's financial condition.  Absent a settlement, there was no assurance that Plaintiffs would prevail at all, much less obtain a judgment for over $200 million.  In addition, such a judgment would significantly exceed Gatos's ability to pay, even today.

    c.  As to Gatos's financial condition, at the time of settlement, Gatos reported that it had a cash balance of $10.5 million and $9 million outstanding debt of as of May 31, 2023; while the LGJV had additional cash, Gatos only has a 70% interest and cannot access the LGJV's cash absent authorized distributions.

    d.  We also note that the Settlement amount is the product of a recommendation from Robert Meyer, a respected mediator.  After the parties were not able to reach agreement after a mediation, Mr. Meyer recommended that the case settle for $21 million.

4.  You noted that Gatos's share price peaked near $20 and declined to the single digits.  As we explained, potentially recoverable damages are not defined by the difference between Gatos's highest and lowest share price, but must be proven to be the amount of decline attributed to the alleged misstatement.  As a general matter, damages are limited by the price movement after the corrective disclosure in January 2022.  You also noted that Gatos's share price has improved since the parties agreed to the Settlement last year.  However, that increase—much of which occurred in the last three months—does not increase the amount of potentially recoverable damages or directly increase Gatos's ability to fund a settlement.

5. You also asked about the amount of Gatos's D&O insurance.  As we explained, the specific amount of insurance is confidential.  However, based on public information, we can confirm that both Gatos and its insurers contributed to the $21 million settlement.  Gatos's latest Form 10-Q, filed on May 6, 2024, states:  "The District Court issued its Preliminary Order on February 29, 2024, approving the proposed settlement. Consistent with the stipulation of settlement requiring that a settlement account be funded within 30 days of the Preliminary Order, the Company and its insurers have fully funded that account, with $1,403 [$1.403 million] funded by the Company and $19,597 [$19.597 million] funded by the Company's insurers."

6. Finally, you asked whether Gatos's management had engaged in insider sales.  Gatos's CEO (Stephen Orr) and CFO (Roger Johnson) did not make insider sales.  Additionally, Defendants argued that Orr actually purchased additional shares, and that the fact that these Defendants did not sell any of their 218,000 shares of stock (or over 1 million vested options) undercuts any suggestion of their fraudulent intent.  The only defendant who made insider sales is Gatos's Chief Geologist Philip Pyle, who sold shares for $1.95 million (with $1.18 million in estimated realized profits).  Gatos's Vice President, Mexico (Luis Felipe Huerta) also sold shares for $1.4 million (with about $739,000 in estimated realized profits), although he is not a defendant.

We trust the foregoing addresses your questions.  Please let me know if we can provide any additional information at this time.

Regards,
Joe


Joseph A. Fonti, Esq.
Bleichmar Fonti & Auld LLP
300 Park Avenue, Suite 1301
New York, New York 10022
O: (212) 789-1342
F: (212) 205-3962
M: (917) 805-8594
jfonti@bfalaw.com
www.bfalaw.com