IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00453-PAB-KAS

MICHAEL BILINSKY, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

GATOS SILVER, INC.,
STEPHEN ORR,
ROGER JOHNSON,
PHILIP PYLE,
JANICE STAIRS,
ALI ERFAN,
IGOR GONZALES,
KARL HANNEMAN,
DAVID PEAT,
CHARLES HANSARD, and
DANIEL MUÑIZ QUINTANILLA,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Plaintiffs' Motion for Final Approval of the Settlement and Approval of the Plan of Allocation [Docket No. 89] and Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs [Docket No. 90]. Lead plaintiff Bard Betz[1] and plaintiff Jude Sweidan (together, "representative plaintiffs") filed the motion for final approval of the class action settlement and motion for awards of attorneys fees and costs. Docket

---

[1] On June 3, 2022, Magistrate Judge Kristen L. Mix appointed Bard Betz as lead plaintiff in this matter. Docket No. 49 at 7.

No. 89 at 1; Docket No. 90 at 1.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

This case arises out of defendants' alleged misleading statements and omissions concerning the mineral reserves at the Cerro Los Gatos mine in Mexico.  Docket No. 87 at 2.  Plaintiffs allege that Gatos Silver, Inc. ("Gatos") and the individual defendants are liable for "violations of the Securities Exchange Act of 1934 and the Securities Act of 1933 resulting from materially false and misleading statements, and omissions of material facts required to be disclosed."  *Id.*; *see also* Docket No. 54 at 12.  Specifically, plaintiffs allege that defendants materially overstated the mine's reserves and resources in Gatos's October 2020 IPO, the July 2021 Offering, and other SEC filings and oral statements based on a 2020 Technical Report that contained material errors.  Docket No. 87 at 2; Docket No. 54 at 12-20, ¶¶ 1-22.  Defendants deny these allegations.  Docket No. 87 at 2.

On June 13, 2023, the parties engaged in a full-day, in-person mediation session before Robert Meyer of Judicial Arbitration and Mediation Services, Inc., resulting in Mr. Meyer's formal mediator's proposal that the case settle for $21,000,000.  Docket No. 89-1 at 11; Docket No. 91 at 15-16, ¶¶ 22, 24.  The parties accepted the proposal and signed a settlement agreement.  Docket No. 87 at 2; Docket No. 85-1.  On February 29, 2024, the Court preliminarily approved the parties' settlement agreement.  Docket No. 87 at 23.  On April 26, 2024, the representative plaintiffs filed a motion for final approval of the settlement and a motion for attorneys fees and costs.  Docket Nos. 89, 90.  On May 31, 2024, the Court held a fairness hearing.  Docket No. 96.

## II. FINAL APPROVAL OF CLASS ACTION CERTIFICATION

Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages. In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

District courts have broad discretion in granting or denying class certification. *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 543 F.3d 597, 603 (10th Cir. 2008). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id*.

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). Where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are

3

satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 968 (10th Cir. 2004)).

### A. Rule 23(a)

Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In the order on the motion for preliminary approval, Docket No. 87 at 9-14, the Court found that each of the requirements was met and incorporates those findings herein. Accordingly, the requirements of Rule 23(a) are met.

### B. Rule 23(b)(3)

The Court preliminarily certified the class under Rule 23(b)(3), *id*. at 14-16, which states that a class action may be maintained if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds that final certification is appropriate for the same reasons it found preliminary approval was warranted. *See* Docket No. 87 at 14-16.

4

### III. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

#### A. <u>Overview of the Settlement Agreement</u>

The proposed Settlement Class consists of the members of the Securities Act Settlement Class and the Exchange Act Settlement Class.  Docket No. 85-1 at 13, ¶ 1.52.  The Securities Act Settlement Class consists of:

> all Persons and entities who, in domestic transactions or on the NYSE, purchased or otherwise acquired Gatos common stock pursuant or traceable to the 2020 Registration Statement or the 2021 Registration Statement, and were damaged thereby.

*Id.* at 12, ¶ 1.49.  The Exchange Act Settlement Class consists of:

> (i) all Persons and entities who purchased or otherwise acquired Gatos common stock listed on the NYSE, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby; (ii) all Persons and entities who, in domestic transactions, purchased or otherwise acquired publicly traded call options on Gatos common stock, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby; and/or (iii) all Persons and entities who, in domestic transactions, sold publicly traded put options on Gatos common stock, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby.

*Id.* at 7, ¶ 1.16.  The proposed Settlement Class excludes:

> Defendants, the current and Class Period officers and directors of the Company, the members of the immediate families and the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person, any entity in which such excluded persons have or had a majority interest, and the Electrum Group, LLC; *provided*, *however*, that any "Investment Vehicle" shall not be excluded from the Settlement Class.

*Id.* at 13, ¶ 1.52.

The settlement agreement provides for a net settlement fund of $21,000,000.  *Id.* at 15, ¶ 2.1.  The class members will receive *pro rata* shares of the net fund based on their recognized losses in transactions in Gatos securities.  Docket No. 89-1 at 17;

5

Docket No. 85-2 at 29, ¶ 25; *see* Docket No. 85-1 at 26, ¶ 6.10 (the fund shall be distributed "substantially in accordance with a Plan of Allocation described in the Notice and approved by the Court"). The settlement agreement permits lead counsel to seek attorneys' fees and costs and permits the representative plaintiffs to seek an award pursuant to 15 U.S.C. § 78u-4(a)(4). Docket No. 85-1 at 28, ¶ 7.1; *see* 15 U.S.C. § 78u-4(a)(4). Class counsel seeks an award of $5,880,000 in attorneys' fees, amounting to 28 percent of the settlement fund, payment of litigation expenses in the amount of $226,314, and service awards for the representative plaintiffs of $15,000 in the aggregate. Docket No. 90-1 at 5, 16.

### B.  Notice to Settlement Class

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be

6

identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

The parties agreed to provide direct and individual notice, in the form of a self-mailer,[2] to be distributed to class members though direct mail. Docket No. 87 at 20. They agreed that the claim administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), would disseminate the notices using a list from defendants' securities transfer agent of all persons who purchased or otherwise acquired Gatos securities between October 28, 2020 and January 25, 2022, as well as Epiq's proprietary list of U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners. *Id.* at 21 (citing Docket No. 82-1 at 24). The Court previously approved the parties' notice plan, notice forms, and claim form. *See id*. at 20-21.

Epiq mailed 71 notices to the addresses listed by defendants' securities transfer agent and 990 notices to addresses from Epiq's list of nominees. Docket No. 91-4 at 3-4, ¶¶ 3-5. The notice directed nominees and brokers who purchased Gatos securities for the beneficial interest of a person or organization other than themselves to either provide a list of names and addresses of all such beneficial owners to Epiq or request from Epiq sufficient copies of the notice to forward to all such beneficial owners. *Id.* at 4, ¶ 6. As a result, Epiq received, and mailed notices to, 3,649 additional potential Settlement Class Members and provided 5,555 notices to brokers and nominees to

---

[2] A "self-mailer" is a folded document with eight 10.5" x 6" panels. Docket No. 82-1 at 16.

forward to their customers.  *Id.* at 5, ¶ 8.  In addition, one nominee, Broadridge, informed Epiq that it had emailed[3] 18,889 copies of the notice to beneficial owners.  *Id.*, ¶ 10.  Furthermore, Epiq published a summary notice in *Investor's Business Daily*, transmitted a summary notice over *PR Newswire*, and published digital notice in the form of banner advertisements on the Google Display Network and Yahoo! Finance websites.  *Id*. at 6, ¶ 12; Docket No. 91-4 at 6, ¶ 12.  Additionally, Epiq maintains a website dedicated to the settlement of the action which makes available copies of the notice, summary notice, long-form notice, proof of claim form, legal documents filed in this action, answers to frequently asked questions, and instructions on how to submit claims, opt out of the settlement, and submit objections.  Docket No. 91-4 at 7, ¶¶ 14, 16-17.  Finally, Epiq maintains a toll-free telephone line, email address, and P.O. Box through which class members can contact the claims administrator.  *Id.* at 8-9, ¶¶ 20-21.  The Court finds that this notice procedure satisfies Rule 23(c)(2)(B) and (e)(1).

---

[3] Although the parties did not seek the Court's approval of notice by email at the preliminary settlement approval stage, "[c]ourts have acknowledged that 'notice by email and text is reasonable in today's mobile society' and that 'these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved.'"  *See Bowling v. DaVita, Inc.*, No. 21-cv-03033-NYW-KLM, 2023 WL 4364140, at *10 (D. Colo. Jul. 6, 2023) (certifying a collective action under the Fair Labor Standards Act) (quoting *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017)).  The Court finds that email notice to Broadridge customers is satisfactory under Rule 23(e)(1).  *See Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2017 WL 3283139, at *4-5 (D. Colo. Aug. 2, 2017) (holding that proposed plan to give notice to class members via email satisfied the requirements of Rule 23(e)(1)); *Sobolewski v. Boselli & Sons, LLC*, No. 16-cv-01573-RM-STV, 2017 WL 4586108, at *3 (D. Colo. Oct. 16, 2017) (approving email notice in a class and collective action because "while United States mail may be the preferred method of providing notice, it is not the only method") (quotation and citation omitted).

### C.  Analysis of Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient

9

discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

In addition, Rule 23(e)(2) states that a court is to consider the following factors when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The goal of this amendment is . . . to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment.

The Court determines that the settlement agreement is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and *Rutter*. The Court finds that the negotiations were conducted fairly and honestly. The settlement agreement was the product of arms-length negotiations between the parties. *See* Docket No. 89-1 at 10-11. The parties participated in an all-day, in-person mediation session before Mr. Meyer, and accepted Mr. Meyer's formal mediator's proposal that the case settle for $21,000,000. *Id*. There is no evidence that the settlement agreement was the result of a collusive agreement between the parties.

Furthermore, the Court finds that serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt.  The parties stipulate that, "[a]lthough Plaintiffs and Plaintiffs' Counsel believe that the claims asserted are meritorious, continued litigation nonetheless posed significant risks to securing any recovery" given defendants' previously filed motion to dismiss and defendants' "significant defenses."  Docket No. 91 at 18, ¶¶ 35-37.

Additionally, the Court finds that the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation.  The proposed settlement amounts to between 9.4% and 63% of plaintiffs' potential recovery at trial.  Docket No. 89-1 at 13; Docket No. 91 at 19, ¶¶ 39-41.  However, even a 9.4% recovery exceeds the median recovery in cases alleging violations of the Securities Exchange Act.  Moreover, Gatos' financial position casts doubt on the possibility of a larger recovery if plaintiffs were awarded more than $21,000,000 in damages at trial.  Docket No. 89-1 at 13; Docket No. 91 at 19-20, ¶¶ 40, 42.  Given the uncertainty of class members' likelihood of success on the merits, Gatos' financial position, and the prospects of protracted litigation, the Court finds that immediate recovery outweighs the time and costs inherent in prolonging this litigation.

Furthermore, the parties believe that the settlement is fair and reasonable.  Class counsel have extensive experience in securities actions, *see* Docket No. 91 at 31-32, ¶¶ 82-87, and state that the settlement agreement is "an outstanding result that provides the Settlement Class with a valuable, immediate recovery instead of the risk and uncertainty of years of further litigation."  Docket No. 89-1 at 5.  At the fairness hearing, the parties agreed that the settlement is fair and reasonable.

11

Additionally, no class members objected to the settlement agreement. Docket No. 89-1 at 15; Docket No. 91-4 at 10, ¶ 27; *see also* Docket No. 96 at 1 (courtroom minutes noting that there were no objectors present at the fairness hearing). Moreover, no class members requested exclusion from the settlement. Docket No. 89-1 at 15; Docket No. 91-4 at 10, ¶ 27. The reaction of class members indicates that the relief is adequate and that class members support the settlement. Finally, the Court finds that the settlement treats class members equitably and the representative plaintiffs and class counsel have adequately represented the class.

As a result, the Court finds that the settlement agreement is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and *Rutter*.

## IV. ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

The representative plaintiffs filed a motion for attorneys' fees, costs, and service awards. Docket No. 90. Class counsel requests attorneys' fees in the amount of $5,880,000, 28 percent of the settlement fund, as well as $226,314 in expenses. Docket No. 90-1 at 5, 16. The representative plaintiffs request a combined award of $15,000. *Id*. No class members objected to the request for attorneys' fees, expenses, or service awards. *Id.* at 18; Docket No. 96 at 1.

In a certified class action, the court may award reasonable attorneys' fees and costs that are authorized by the parties' agreement provided that (1) the claim for an award is made by a motion under Rule 54(d)(2) and notice of the motion is directed to class members; (2) a class member or party from whom payment is sought may object; and (3) the court finds facts and states its legal conclusions. Fed. R. Civ. P. 23(h). The notice provided to class members stated that class counsel would request an attorneys'

fee award not to exceed 28% of the settlement fund, costs not to exceed $325,000, and service awards of no more than $15,000 in aggregate. Docket No. 91-4 at 17.

### A. Attorneys' Fees

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because the fee request is for a percentage of the common fund, the Court will consider the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases); *see also Paulson v. McKowen*, No. 19-cv-02639-PAB-NYW, 2023 WL 2528783, at *7 (D. Colo. Mar. 15, 2023).

The "percentage reflected in a common fund award must be reasonable" and the court "must articulate specific reasons for fee awards." *Brown*, 838 F.2d at 454 (citation and internal quotations omitted). In determining the reasonableness of a percentage award, courts apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee - this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 454-55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483. "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455-56 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

Class counsel have significant experience in class action cases and securities litigation, as reflected in the information provided to the Court. *See* Docket No. 90-1 at 13; Docket No. 91-7 at 20-47 (describing experience of the Wheeler Trigg O'Donnell LLP attorneys who worked on this case with regard to class action and securities litigation); Docket No. 91-8 at 13-14 (describing experience of The Schall Law Firm attorneys who worked on this case with regard to class action and securities litigation); Docket No. 91-9 at 3, ¶ 3 (describing Susan R. Podolsky's experience with class actions and securities litigation). Class counsel additionally took this case on a contingency basis, *see* Docket No. 90-1 at 15, adding to the risk class counsel incurred by bringing the case. *See In re Crocs, Inc. Secs. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *4 (D. Colo. Sept. 18, 2015) ("A contingent fee arrangement often weighs in favor of a greater fee because such a large investment of money and time places incredible burdens upon law practices." (internal alterations, quotations, and citation omitted)). A fee of one-third of the common fund is typical in complex cases. *See id*. at *3 (collecting cases). Class counsel's fee request is 28 percent of the common fund. Docket No. 90-1 at 5. The Court finds that, under the *Johnson* factors, an award of 28

percent of the settlement fund in attorneys' fees to class counsel is reasonable. [4] Accordingly, the Court awards class counsel $5,880,000 in attorneys' fees.

### B. Expenses

Plaintiffs request $226,314 for litigation expenses. *Id.* at 18. Class counsel state that the expenses include fees related to consulting experts, an investigator, counsel for a former Gatos employee, mediation fees, legal research, service and filing fees, and transportation costs to attend mediation. *Id.*; *see also* Docket No. 91-6 at 7; Docket No. 91-7 at 5, ¶ 11. This request is significantly below the maximum of $325,000 set out in the class notice. *See* Docket No. 91-4 at 17. The Court finds that these costs are reasonable and therefore awards class counsel $226,314 for litigation expenses.

### C. Incentive Award

"Courts have recognized that an award may be appropriate to provide an incentive to act as a named plaintiff." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017). Additionally, "courts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Id.* at 468 (collecting cases); *see also* 15 U.S.C. § 78u-4(a)(4) (permitting an award to a representative party serving on behalf of a class that is directly related to the representation of the class). Plaintiffs

---

[4] Furthermore, class counsel represent that, under the lodestar method, they would have incurred $1,853,045 in attorneys' fees. Docket No. 90-1 at 16. A fee award of $5,880,000 is equal to the loadstar with a 3.17 multiplier. *Id.* Courts have awarded fees equivalent to the loadstar with multipliers ranging from 0.8 to 4.6. *Mishkin v. Zynex, Inc.,* No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (awarding a fee equivalent to the loadstar with a 0.8 multiplier and collecting cases approving multipliers ranging from 2.5 to 4.6). The Court finds that the loadstar cross-check weighs in favor of the reasonableness of the award.

request an award of $10,000 for Mr. Betz and $5,000 for Mr. Sweidan.  Docket No. 90-1 at 19.  Plaintiffs state that these awards "reflect the time that [the representative plaintiffs] devoted to overseeing this Action."  *Id.*  Mr. Betz spent 64 hours and Mr. Sweidan spent 20 hours overseeing the litigation, which included conferring with class counsel and reviewing pleadings, motions, and other filings.  *Id.*  In addition, Mr. Betz participated in the mediation.  *Id.*  The Court finds that the service awards are fair and reasonable based on the representative plaintiffs' involvement in this case.  As a result, the Court awards Mr. Betz a service award of $10,000 and Mr. Sweidan a service award of $5,000.

## VII. CONCLUSION

Therefore, it is

**ORDERED** that Plaintiffs' Motion for Final Approval of the Settlement and Approval of the Plan of Allocation [Docket No. 89] is **GRANTED**.  It is further

**ORDERED** that Lead Counsel and WTO's Motion for Awards of Attorneys' Fees, Litigation Expenses, and Reasonable Costs and Expenses to Plaintiffs [Docket No. 90] is **GRANTED**.  It is further

**ORDERED** that, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of settlement only, the settlement class is certified as follows:

> All Persons and entities who, in domestic transactions or on the NYSE, purchased or otherwise acquired Gatos common stock pursuant or traceable to the 2020 Registration Statement or the 2021 Registration Statement, and were damaged thereby; all Persons and entities who purchased or otherwise acquired Gatos common stock listed on the NYSE, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby; all Persons and entities who, in domestic transactions, purchased or otherwise acquired publicly traded call options

16

>on Gatos common stock, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby; and/or all Persons and entities who, in domestic transactions, sold publicly traded put options on Gatos common stock, from December 9, 2020 through January 25, 2022, both inclusive, and were damaged thereby.  Excluded from the Settlement Class are Defendants, the current and Class Period officers and directors of the Company, the members of the immediate families and the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person, any entity in which such excluded persons have or had a majority interest, and the Electrum Group, LLC; *provided*, *however*, that any "Investment Vehicle" shall not be excluded from the Settlement Class.

It is further

**ORDERED** that that the Court finds, solely for the purposes of this settlement, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of the settlement class are so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims of the named plaintiffs are typical of the claims of the class; (d) the named plaintiffs and plaintiffs' counsel have fairly and adequately represented and protected the interests of all of the class members; and (e) questions of law or fact predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  It is further

**ORDERED** that the Court finds that the notice given to members of the class was the best notice practicable under the circumstances, was reasonably calculated under the circumstances to apprise such members of the pendency of this action and to afford them an opportunity to object to, and meets the requirements of Rule 23 (c)(2)(B) and (e)(1).  Because the Court has afforded a full opportunity to all class members to be

17

heard, the Court further determines that all members of the class are bound by the settlement agreement.  It is further

    **ORDERED** that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court finds that the settlement agreement is fair, reasonable, and adequate.  Accordingly, the Court gives final approval to the settlement agreement in all respects and authorizes and directs the parties to consummate the settlement agreement in accordance with its terms and provisions.  It is further

    **ORDERED** that plaintiffs shall file the settlement agreement as a separate docket entry within **ten days** of the entry of this order.  It is further

    **ORDERED** that the representative plaintiffs and all class members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the claims released by the settlement agreement.  It is further

    **ORDERED** that class counsel is awarded $5,880,000 from the settlement fund, which represents twenty eight percent of the net settlement fund.  It is further

    **ORDERED** that lead plaintiff Bard Betz is awarded a service award of $10,000 from the settlement fund.  It is further

    **ORDERED** that plaintiff Jude Sweidan is awarded a service award of $5,000 from the settlement fund.  It is further

    **ORDERED** that class counsel shall be reimbursed $226,314 for litigation expenses from the settlement fund.  It is further

    **ORDERED** that neither this order nor the settlement agreement is an admission or concession by defendants respecting any facts, liabilities, or wrongdoing.  It is further

**ORDERED** that, without affecting the finality of this order, this Court retains jurisdiction to consider all further matters arising out of or connected with the settlement agreement, including its implementation.  It is further

**ORDERED** that judgment shall be entered dismissing this case with prejudice.

DATED October 15, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge